### Petition of LIEBERMAN.

District Court, E. D. New York.
May 22, 1943.

Matthew M. Levy, of New York City (Harold P. Spivak, of New York City, on the brief), for petitioner.

GALSTON, District Judge.

This proceeding presents an unusually interesting situation. The petitioner was born in Russia in 1900. She arrived in the United States in 1913. In October, 1920, she married her mother's brother. They have three children. In February, 1942, she sought to file a petition for naturalization and then learned, for the first time, that her marriage was illegal under the laws of the State of New York. Thereupon she and her husband went to Providence, Rhode Island and on May 1, 1942, they were re-married by a rabbi.

The foregoing facts were outlined to the court, and with the file in the matter there was submitted a memorandum by an examiner of the Department of Naturalization on the question whether an incestuous marriage, validly contracted under the laws of another state or country, will be recognized in New York State.

The Domestic Relations Law of the State of New York, Consol. Laws, c. 14, § 5, subdivision 3, declares that a marriage of an uncle and niece is deemed to be incestuous and void. That being so, if nothing else appeared I suppose that the applicant, not being able to show a valid marriage, would be deemed to have failed to establish good moral character. The conclusion seems artificial because morals, after all, must involve intention. It is true that what constitutes moral turpitude cannot be left to individual judgment, and that when a statute of the state declares a marriage incestuous I suppose an assumption may be that the legislature believed the act involved moral turpitude, though indeed that need not be the reason for the adoption of the statute. As was said in a recent opinion of Justice Bergen in the Supreme Court of Albany County at a naturalization hearing held on March 12, 1943, the good faith of the petitioner should be considered in determining what constitutes immoral conduct. Petition of Haverly, 180 Misc. 16, 42 N.Y.S.2d 217. However, it is not necessary to the decision of the question presented herein to determine whether the marriage deemed incestuous under the laws of the State of New York is evidence of moral turpitude on the part of the petitioner. The re-marriage in Rhode Island under the laws of that state was valid. General Laws of Rhode Island, Title XXXVI, Chap. 415, § 4.

This court is not obliged under the decision of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 822, 82 L. Ed. 1188, 114 A.L.R. 1487, to follow the decisions of the courts of this state in determining the moral character of the petitioner, for its jurisdiction stems from the federal statute on naturalization. As was said by Mr. Justice Brandeis in the Erie case, "Except in matters governed by the Federal Constitution, or by acts of Congress, the law to be applied in any case is the law of the state."

This case falls within the exception noted, and in consequence the question of mor-

al character will be determined independently of what effect would be given by the courts of the State of New York to a marriage in a sister state. Accordingly the petition for naturalization is approved.