Petitions of RUDDER et al.

Nos. 131–134, Docket 20420.

Circuit Court of Appeals, Second Circuit.
Jan. 27, 1947.

J. Vincent Keogh, U. S. Atty., of Brooklyn, N. Y. (Vine H. Smith and Edward S. Szukelewicz, Asst. U. S. Attys., both of Brooklyn, N. Y., of counsel), for appellant.

Lawrence Pomeroy, of Buffalo, N. Y., for appellees.

Before SWAN, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

SWAN, Circuit Judge.

These four appeals in naturalization proceedings present similar questions and have been argued together. In each case a preliminary hearing was conducted by a duly designated examiner of the Naturalization Service of the Department of Justice, resulting in his recommendation that the petition be denied on the ground that the petitioner had failed to establish good moral character during the five year period immediately preceding the date of filing his petition, as required by 8 U.S.C.A. § 707(a). In each case the district court

disapproved the examiner's recommendation and admitted the petitioner to citizenship. The appellant contends that in so ruling the court abused its discretion.

In support of this contention the appellant refers in its briefs and argument to facts concerning the marital relations of the particular alien involved, which counsel for the appellees contends are not disclosed by the record on appeal. This raises a preliminary question for determination before the merits of the controversy are reached. As certified by the clerk of the district court, the record in each case consists of (1) the alien's petition for naturalization, with accompanying affidavits by his character witnesses, (2) examiner's recommendation, (3) the stenographic minutes of the proceedings in open court on February 26, 1946, (4) the court's order, (5) the notice of appeal, and (6) the appellant's designation as to the record on appeal. The first five items are copies of original papers and records filed in the district court, and no objection is, or could be, made to their inclusion in the record. In addition to them, the appellant's designation calls for certain papers described as "Copies of papers in the files of the Naturalization Bureau which were submitted to this Court for its consideration at the time when it entertained the application of the above named petitioner for citizenship." In each case such additional material has been presented to us in the form of an Appendix to the appellant's brief.[1] The appellees object that it is not properly before us. Technically they are right. The rules of this court as to appendices permit the appellant to print such parts of the record as he has designated. See Rule 17. What the appellant has presented as an appendix is not part of the record as certified by the clerk. The appellant did not attempt to have the record settled by the district judge, as is permissible if differences arise as to whether the record truly discloses what occurred in the district court. Rule 75(h), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.[2] Nor does it appear that anything was omitted from the record on appeal "by error or accident," in which case the omission might be cured pursuant to Rule 75(h). See United States v. Brodbeck, 3 Cir., 139 F.2d 916; Moore's Federal Practice, Vol. 3, p. 3406. Since the material printed in the appendices has not been incorporated into the records on appeal, we shall not consider it in determining the merits of the appeals.[3]

The basis for the appellant's contention that each alien failed to establish good moral character during the requisite five year period is to be found in the examiner's oral statement to the court. This statement was made in open court in the presence of the petitioner,[4] was taken down by the official stenographer, and appears in the transcript of the hearing contained in the record. The appellees, however, contend that the statement of the examiner, who was not sworn as a witness, can be given no weight as evidence to establish the facts he narrates concerning the alien's marital relations; that the statute, 8 U.S.C.A. § 734(d), gives the United States the right to produce evidence and to be heard in opposition to the granting of the petition in naturalization proceedings, and since no evidence was produced by the United States, there is nothing to over-

---

[1] In Rudder's case the Appendix contains copies of the "Government's Objection" and of two affidavits by Rudder. In Johnson's case it contains copies of the "Government's Objection," the "Naturalization Examiner's Report," an affidavit by Johnson, a certified copy of a judgment of divorce granted on January 2, 1923 to Thomas South against Agnes South, and an affidavit by Agnes South signed as "Agnes Johnson." In Mengler's case it contains copies of the "Government's Objection" and an affidavit by Mengler. In Jannibelli's case it contains copies of the "Government's Objection," and the "Naturalization Examiner's Report."

[2] The Federal Rules of Civil Procedure are applicable to appeals in proceedings for admission to citizenship. Rule 81(a) (2), F.R.C.P., 28 U.S.C.A. following section 723c.

[3] Whether it could have been properly so incorporated is a question not now before us and upon which we express no opinion.

[4] The petitioner was not represented by counsel in the district court. Counsel was assigned to him for the appellate proceedings.

come the prima facie proof of good moral character made by the alien's petition with its accompanying affidavits. We think this is too narrow a view of the procedure contemplated by the statute. Section 733 of Title 8 provides for preliminary examinations of the petitioner before a designated examiner and for the submission of his findings and recommendation to the court at the final hearing. Section 734 provides the procedure at final hearing. It must be had in open court. If there has been a preliminary hearing by an examiner, the court may, in its discretion, examine the petitioner and the witnesses, and must do so if the petitioner so demands. If the United States appears in opposition, it has "The full rights of a litigant," Tutun v. United States, 270 U.S. 568, 577, 46 S.Ct. 425, 427, 70 L.Ed. 738, and may cross-examine the petitioner and the witnesses and produce evidence on its own behalf. But we do not think this reservation of the rights of a litigant requires the United States to put the petitioner upon the stand and by cross-examination to extract from him in the presence of the court the admissions already made at the preliminary hearing before the examiner. Such hearing is one step in ascertaining whether the applicant is a fit candidate for citizenship. See United States v. Saracino, 3 Cir., 43 F.2d 76, 77. We think that it should suffice, if no more is required by the court, for the examiner to state to the court in the presence of the petitioner the facts brought out by the preliminary hearing. If the petitioner wishes to contradict them he may demand that witnesses be called; if he does not so demand, he should be taken for purposes of the hearing to admit the facts as stated. In the only case we have found involving the identical situation Judge Bondy remarked, "It is assumed that the facts are as stated by the district director of naturalization without contradiction." In re Spiegel, D.C.S.D.N. Y., 24 F.2d 605. It is apparent from the stenographic minutes of the proceedings that Judge Kennedy made a similar assumption in the cases at bar. We shall likewise so assume in considering the merits of the appeals.

In Johnson's case, the alien was born in Finland and came to the United States in 1912; he is 54 years old and by occupation a dock builder. His petition for naturalization, filed in April 1943, states that he was married in New York in 1924, and has no children. The examiner informed the court that Johnson was not legally married because the "wife," who had been previously married, was divorced by her husband in January 1923, and a New York statute prohibits a divorced defendant from remarrying within the state without first obtaining permission so to do from the state court, Domestic Relations Law, N. Y., Consol. Laws, c. 14, § 8; that the petitioner admitted his wife had not received such permission, and "we have been living together without being married." Because of the statutory impediment, the relationship did not constitute a common law marriage; and the examiner urged that the parties to it, "now, at least," know that their relationship is "meretricious." The district judge, however, ruled that the situation had existed openly for so many years that it was tantamount to a common law relationship and was not meretricious. In so ruling we do not think the district judge abused the discretion vested in him to determine whether the petitioner "Has been and still is a person of good moral character." 8 U.S.C.A. § 707 (a) (3). Morality is not to be measured solely by conventional formality, nor are the mores of a community static. The trend of recent naturalization decisions is to stress stability and faithfulness in the "marital" relationship rather than the mere legality of ties, which everyone knows may so easily be severed if the parties have the financial resources to obtain a Reno divorce. See Petition of R———, D.C.Mass., 56 F.Supp. 969, and authorities hereinafter cited.

Petitioner Rudder is a blacksmith by occupation, 43 years of age, who came to the United States in 1923 from Barbados, B. W. I. He is of the African race and of British nationality. In his petition, filed August 6, 1945, he states that he was married in Brooklyn on June 17, 1945, and that he has one child born on January 9, 1941.

The examiner stated to the court that the petitioner and his wife commenced to live together on January 9, 1941, when she bore a child of which he is the father. At that time she was a married woman separated from her husband. The latter died in April 1945 and thereafter she and the petitioner were legally married. He admitted that they would have continued to live together if the former husband had not died. Because the relationship was adulterous until the former husband's death, the United States objected to granting the petitioner citizenship, but the district court overruled the objection.

The situation as to Mengler is practically identical. He is a German, 37 years old, who arrived in 1927. By occupation he is a baker. He was married in Brooklyn in November 1943 and has a son born in June 1939. In 1936 he commenced living with his "wife," who was then a married woman separated from her husband, from whom she secured a divorce in Florida in June 1943. The petition for naturalization was filed in January 1945.

Jannibelli filed his petition in October 1944. He came to this country from Italy in 1906 and is 58 years old. His petition states that he was married to his wife in Brooklyn in April 1909, and they have four children, all of whom reside in New York. The examiner informed the court that the petitioner has been separated from his wife for the past fifteen years, except for a few months in 1934 when he made an unsuccessful attempt to resume living with her; that for the last eight or nine years he has maintained an adulterous relationship with an unmarried woman who is known to the neighbors and others as his "wife," and that by way of explanation he stated "I am in this condition because my wife has refused to give me a divorce just for spite. I asked her for a divorce 15 years ago and she refused."

In Estrin v. United States, 2 Cir., 80 F.2d 105, this court denied citizenship to an applicant who was shown to have committed within the five year period preceding the filing of his petition an act of adultery which formed the basis for a divorce granted to his wife. Such an act we said is offensive to the generally accepted moral standards of the community. To that view we still adhere. But the cases now at bar present a very different situation. There the sexual intercourse accepted as proof of lack of good moral character was prompted by lust. What we are here asked to do is to brand as immoral long-term, faithful relationships between couples who consider themselves and are considered by their neighbors as upright and decent husbands and wives and would willingly have made legitimate their status if they could. Indeed, two of the couples became formally married as soon as that was legally possible; and the third couple would do so if Jannibelli could secure a divorce. We do not believe that the present sentiment of the community views as morally reprehensible such faithful and long continued relationships under the circumstances here disclosed. And the court decisions, following as they should the mores of the time, show an increasingly liberal trend in naturalization cases. Thus in 1928 citizenship was denied to an applicant who had remarried in honest reliance upon an invalid rabbinical divorce, In re Spiegel, D.C.S.D.N.Y., 24 F.2d 605; but in 1943 we said that remarriage after such a divorce did not necessarily preclude naturalization, even though the first marriage had been concealed in the application for a license for the second. In re Schlau, 2 Cir., 136 F.2d 480. In United States v. Rubia, 5 Cir., 110 F.2d 92, citizenship was granted to an applicant having a long and honorable service in the coast guard, despite the fact that he had been living with a married woman who was separated from her husband. In Petition of R———, D.C.Mass., 56 F.Supp. 969, the court granted naturalization to an applicant, who after being informed by agents of the Naturalization Service that her husband's Mexican divorce was invalid, continued to live with him in a relationship which made her guilty of the crime of fornication under the state law. See also Petition of Lieberman, D.C.E.D.N.Y., 50 F.Supp. 121.

Because of the permanence, stability and apparent respectability of the relationships

involved in the cases at bar, we think the trial judge did not err in ruling that the several petitioners were not disqualified for citizenship.

Orders affirmed.