## UNITED STATES v. FRANCIOSO.
### No. 27, Docket 20667.

Circuit Court of Appeals, Second Circuit.

Nov. 5, 1947.

Mario Pittoni and J. Vincent Keogh, U.S. Atty., both of Brooklyn, N. Y., for appellant.

Lawrence Pomeroy, of Buffalo, N. Y., for appellee.

Before L. HAND, SWAN and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

This is an appeal from an order admitting the appellee, Francioso, to citizenship.

At the hearing the "naturalization examiner" objected to his admission upon the ground that he had married his niece and had been living incestuously with her during the five years before he filed his petition. Upon the following facts the judge held that Francioso had been "a person of good moral character" and naturalized him. Francioso was born in Italy in 1905, immigrated into the United States in 1923, and declared his intention of becoming a citizen in 1924. His wife was born in Italy in 1906, immigrated in 1911, and has remained here since then. They were married in Connecticut on February 13, 1925, and have four children, born in 1926, 1927, 1930 and 1933. Francioso was the uncle of his wife, and knew when he married her that the marriage was unlawful in Connecticut and that the magistrate would not have married them, had they not suppressed their relationship. They have always lived together in apparent concord, and at some time which the record leaves indefinite, a priest of the Catholic Church—of which both spouses are communicants—"solemnized" the marriage with the consent of his bishop.

In United States ex rel. Iorio v. Day,[1] in speaking of crimes involving "moral turpitude" we held that the standard was, not what we personally might set, but "the commonly accepted mores": i.e. the generally accepted moral conventions current at the time, so far as we could ascertain them. The majority opinion in United States ex rel. Berlandi v. Reimer[2] perhaps looked a little askance at that decision; but it did not overrule it, and we think that the same test applies to the statutory standard of "good moral character" in the naturalization statute. Would the moral feelings, now prevalent generally in this country, be outraged because Francioso continued to live with his wife and four children between 1938 and 1943? Anything he had done before that time does not count; for the statute does not search further back into the past.

In 1938 Francioso's children were five, eight, eleven and twelve years old, and his wife was 31; he was morally and legally responsible for their nurture and at least

[1] 2 Cir., 34 F.2d 920, 921.

[2] 2 Cir., 113 F.2d 429.

morally responsible for hers. Cato himself would not have demanded that he should turn all five adrift. True, he might have left the home and supported them out of his earnings; but to do so would deprive his children of the protection, guidance and solace of a father. We can think of no course open to him which would not have been regarded as more immoral than that which he followed, unless it be that he should live at home, but as a celibate. There may be purists who would insist that this alone was consistent with "good moral conduct"; but we do not believe that the conscience of the ordinary man demands that degree of ascesis; and we have for warrant the fact that the Church—least of all complaisant with sexual lapses—saw fit to sanction the continuance of this union. Indeed, such a marriage would have been lawful in New York until 1893,[3] as it was at common-law.[4] To be sure its legality does not finally determine its morality; but it helps to do so, for the fact that disapproval of such marriages was so long in taking the form of law, shows that it is condemned in no such sense as marriages forbidden by "God's law." It stands between those and the marriage of first cousins which is ordinarily, though not universally, regarded as permissible.

It is especially relevant, we think, that the relationship of these spouses did not involve those factors which particularly make such marriages abhorrent. It was not as though they had earlier had those close and continuous family contacts which are usual between uncle and niece. Francioso had lived in Italy until he was eighteen years of age; his wife immigrated when she was a child of four; they could have had no acquaintance until he came here in August, 1923, only eighteen months before they married. It is to the highest degree improbable that in that short time there should have arisen between them the familial intimacy common between uncle and niece, which is properly thought to be inimical to marriage. What we said only a few months ago applies as well here as it did when we said it: "The trend of recent naturalization decisions is to stress stability and faithfulness in the 'marital' relationship rather than the mere legality of ties, which everyone knows may be so easily severed if the parties have the financial resources * * *."[5] In Petition of Lieberman,[6] Judge Galston ruled that it was not a bar to the wife's naturalization that she had married her uncle in New York, when, learning that that marriage was illegal, the couple went to Rhode Island, were there married by a rabbi and returned to New York: this because in Rhode Island a marriage between Jews which is allowed by their religion is lawful.[7] Moreover, the Attorney General of New York has ruled that an uncle and niece, lawfully married in another state are still lawfully married after they take up a residence in New York.[8] Perhaps there is no state in the Union to which this couple could repair and be lawfully married; but these rulings show that the question is one of legality rather than morals, and it may therefore be fairly said to fall within the language we have just quoted.

Order affirmed.

---

[3] Weisberg v. Weisberg, 112 App.Div. 231, 98 N.Y.S. 260.

[4] Harrison v. Burwell, 2 Ventris 9; Wightman v. Wightman, 4 Johns.Ch. 343; Campbell v. Crampton, C.C.N.Y., 2 F. 417.

[5] Petitions of Rudder, 159 F.2d 695, 697.

[6] D.C., 50 F.Supp. 121.

[7] General Laws of Rhode Island, Chap. 415.

[8] Report of the New York Attorney General (1933) p. 83.