### KRAUSSE v. UNITED STATES.
### PAPP v. UNITED STATES.
**Nos. 121–136, Docket 22190–22200.**

United States Court of Appeals
Second Circuit.

Argued Jan. 8, 1952.

Decided Feb. 25, 1952.

441

Alfred S. Holmes, New York City, Edward L. Dubroff, Brooklyn, N. Y., of counsel, for appellant Krausse.

George Weisberg, New York City, for appellant Papp.

Myles J. Lane, U. S. Atty., New York City, Harold J. Raby and William J. Sexton, Asst. U. S. Attys., Louis Steinberg, District Counsel, and Max Blau, Attorney, Department of Justice, Immigration and Naturalization Service, all of New York City, of counsel, for appellee.

Before SWAN, Chief Judge, and CHASE and FRANK, Circuit Judges.

SWAN, Chief Judge.

These are appeals from orders denying the appellants' petitions for naturalization. Both petitions were heard by the same district judge and were denied on the same ground, and the appeals have been heard together in this court. The only significant difference in the two cases is that Papp was examined by the district judge in open court, while Krausse was not.

1. *Krausse's Appeal.* This appellant is a native and national of Germany. He was born in 1907, was married to a citizen of the United States in 1932, was admitted to the United States for permanent residence in 1934 and, on August 22, 1949, filed his petition for naturalization. Under the provisions of sections 707(a) and 710(a) of Title 8 of the United States Code Annotated the petitioner was required to establish that he has been "attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States," for a period of at least one year from the date of filing his petition of naturalization, that is, for the year commencing August 22, 1948. On the ground that he failed to carry the burden of proving such attachment and favorable disposition during the required statutory period, the district judge denied the petition.

At the final hearing upon his petition Krausse was not examined by the district judge nor did any witness testify. This was permissible because a designated examiner had conducted a preliminary hearing. 8 U.S.C.A. § 734(b). In opposition to the petition the United States submitted two exhibits: (1) The report of the Immigration and Naturalization Service recommending that the petition be denied, and (2) the question and answer statement of the petitioner's testimony at the preliminary examination before the designated examiner. 8 U.S.C.A. § 733. Since all the evidence was documentary this court stands in the same position as did the district judge in passing upon whether the petitioner carried his burden of proof.

At the preliminary hearing the appellant swore that he believed in the

The appellant's conduct to which the district judge referred in his memorandum opinion was the following: In 1938 he applied for membership in and paid a dollar, one month's dues, to the Deutsche-Amerikanische Berufgemeinshaft, an organization subsequently listed by the Attorney General as subversive. He explained that his purpose in applying for membership was to get a job on a German paper. In 1942 he stated that he was unwilling to fight against Germany because he had relatives there. In the same year he said he would rather be repatriated to Germany than interned here. He was interned from November 17, 1942 to June 14, 1944 as an alien enemy and was not released from parole until November 15, 1945. In February 1945 he informed the parole officer that he would never fight Germany or its allies. Although he has been married to a citizen since 1932, he claims that he first decided to become a citizen four or five years ago, after the end of the war.

In our opinion the foregoing facts adverted to in the judge's memorandum opinion, do not justify denial of the appellant's petition. As the Supreme Court has noted, the fact of internment may have little bearing on an alien's qualification for citizenship when peace returns. Mahler v. Eby, 264 U.S. 32, 42, 44 S.Ct. 283, 68 L.Ed. 549. Nor does a refusal to bear arms necessarily constitute a bar to naturalization. Girouard v. United States, 328 U.S. 61, 66 S.Ct. 826, 90 L.Ed. 1084; Cohnstaedt v. Immigration and Naturalization Service, 339 U.S. 901, 70 S.Ct. 516, 94 L.Ed. 1331. No adverse inference can be drawn from the fact that the appellant did not decide to apply for citizenship until after the end of the war. The naturalization acts are permissive; they do not require an alien to apply for citizenship within any prescribed time after he becomes qualified to do so.

A petitioner for naturalization makes a *prima facie* case by his sworn petition and the affidavits of his witnesses. We have examined carefully the documentary evidence introduced by the Government in opposition to the petition and we are satisfied that the conclusion that the petitioner, Krausse, failed to carry his burden of proof is erroneous. See Stasiukevich v. Nicolls, 1 Cir., 168 F.2d 474, 478.

2. *Papp's Appeal.* He is a Hungarian national. In 1924 at the age of eighteen, he entered the United States illegally as a stowaway. Subsequently, in 1946 he was legally admitted for permanent residence and thereafter he has resided here continuously with his wife, who is a citizen of the United States. They were mar-

1. Compare cases dealing with proof of a petitioner's "good moral character", Petition of Zele, 2 Cir., 140 F.2d 773, 776; United States v. Francioso, 2 Cir., 164 F.2d 163; Repouille v. United States, 2 Cir., 165 F.2d 152; Daddona v. United States, 2 Cir., 170 F.2d 964, certiorari denied 336 U.S. 961, 69 S.Ct. 889, 93 L.Ed. 1113; Marcantonio v. United States, 4 Cir., 185 F.2d 934; Application of Murra, 7 Cir., 178 F.2d 670.

ried in 1943. The statutory period for which he must establish his qualifications for citizenship commenced April 20, 1947, two years prior to the date of filing his petition for naturalization. 8 U.S.C.A. § 711. In a memorandum opinion the district judge held that he failed to sustain the burden of proving that he has been attached to the principles of the Constitution and well disposed to the good order and happiness of the United States for the statutory period. As already noted, the principal distinction between the present appeal and Krausse's is the fact that Papp was examined by the court at the final hearing on his petition.

On three occasions before he was legally admitted to the United States the appellant signed Selective Service questionnaires in which he objected to service in the armed forces of the United States. On the first two occasions, August 19, 1942 and December 10, 1942, he gave reasons which the district judge apparently thought to be an adequate excuse, and we certainly do, namely, that he might have to fight members of his own family. The third questionnaire was sworn to on October 21, 1943. Prior to that date, the appellant had been notified by letter by his local draft board that under a recent ruling an enemy alien who is unwilling to serve in a combat theatre where he might be required to fight against fellow nationals will, if assigned to duty in a combat theatre, be assigned to a theatre "where he will not normally be required to fight against fellow nationals or blood relatives." In answering the October 1943 questionnaire the appellant objected to service in any theatre of war, stating: "In as much as, up to the present time, I have not been legally admitted for permanent residence into the United States, I have remained a citizen and a national of Hungary. With this legal status there is no other choice for me but to object to service in the armed or naval forces of the United States anywhere or in any theatre of war. Should I do otherwise I would commit treason and if I fell in the

hands of the enemy at any time or as prisoner of war I would be subject to the death penalty."

Upon his examination by the court, when asked whether the reason he objected to service in any theatre of war was because he knew that enemy aliens had the privilege of selecting a theatre that would not conflict with their prior allegiance, he replied that the privilege of selection applied to enemy aliens who were residing here legally, and did not apply to him. The following then occurred:

"The Court: It applied to all enemy aliens, did it not?

"The Witness: That applied to an enemy alien when he was here legally, and then, when he entered into the service, after three months, he was given an opportunity to become a citizen, but the prior conditions to that was a legalization of his entry. That was the reason I went to Washington, to legalize my entry, and I was denied that.

"Mr. Kroll Examiner for the Immigration and Naturalization Service: In order to avoid quibbling about the contents—

"The Court: This is just quibbling and I don't believe a word of it.

\* \* \* \* \* \*

"The Court: You wanted legalization on your own terms, did you not?

"The Witness: No, sir.

"The Court: Legalization of your entrance?

"The Witness: I wanted legalization of my entrance.

"The Court: On your own terms?

"The Witness: No, sir, there were no terms or conditions mentioned."

Apparently the judge did not believe the reason Papp gave for objecting to service in any theatre of war.[2] But he made no specific findings of fact. The opinion says only "Petitioner is not very convincing in his denial that the change in his objection to service was directly attributable to the change in Selective Service policy." The opinion also states that re-

---

2. In colloquy with counsel, the court referred to "this cock-and-bull story he is now telling."

fusal to bear arms is not of itself a sufficient ground for denial of the petition and that the decision will not be based upon acts which occurred beyond the statutory period. Consequently it is not clear on what ground the court based its conclusion that the petitioner has failed to sustain the burden of proving that he has been attached to the principles of the Constitution and well disposed to the good order and happiness of the United States for the statutory period. On the record as a whole, we find no such contradictions in his testimony as to justify discrediting his own assertions of attachment to the United States and disregarding the opinions of reputable attorneys who testified as witnesses in his behalf. Before the critical period the petitioner tried repeatedly to get legal admission to this country; he bought war bonds; he did nothing which showed attachment to Hungary. During the critical period his conduct appears to have been irreproachable. In his case as well as Krausse's we think the legal conclusion that the petitioner failed to sustain the burden of proof should be reversed.

Judgments reversed with directions to admit each appellant to citizenship.