### Petition of ANZALONE.
### No. 86913.

United States District Court
D. New Jersey.
Oct. 10, 1952.

Ignazio Anzalone, pro se.

Bertram M. Bernard, Immigration & Naturalization Service, Newark, N. J., for respondent.

MODARELLI, District Judge.

. This is an application for granting a petition for naturalization. The Immigration and Naturalization Service moves for denial of the petition on the ground that the "petitioner has failed to establish good moral character for the period required by law," i. e., for five years immediately preceding September 24, 1948, the date of the filing of his petition for naturalization.

Petitioner is 56 years of age; a native of Italy. In 1929, he abandoned his wife and one child in Italy and entered this country under an assumed name. He has been known variously as Ignazio Anzalone, Mario Bullones, Casponi De Luca, and Morris Miller. In 1939, he adjusted his immigration status by voluntary departure to Cuba and re-entry under a quota immigration visa.

Petitioner's wife wrote many letters imploring his return, indicating her affection for him, reciting their daughter's desire to see him, and requesting some aid in their struggle against severe economic conditions in Italy. Petitioner replied to his wife and child infrequently. Since 1935 they received almost no word from him. As evidence of assistance to his family, he testified that he sent packages to his wife. He could claim having sent only two packages in all the years of his separation from his family. The wife, through correspondence, verifies having received one package. Petitioner ascribes this lack of generosity to accumulated debts, but it is noted that he has been sufficiently prosperous to purchase two houses in this country, one of which he signed over to one Lena Nicotera, known also as Lena Miller.

For the past twenty years, petitioner has lived with Mrs. Nicotera, a married woman separated but not divorced from her husband. The two have held themselves out to be husband and wife. Little credence can be given to petitioner's testimony that they have not indulged in an extramarital union, that Mrs. Nicotera acts merely as his house-

keeper. Their cohabitation under the same roof for twenty years, his transfer of property purchased with his funds to her name, and petitioner's claim for income tax purposes that Mrs. Nicotera was his wife, all point to something more than a platonic or an employer-employee relationship.

Mr. Anzalone made no effort to bring his family to this country, and his explanation that he could not do so because he was not a citizen does not square with the provisions of the immigration laws for admission of the family of a legally resident alien. In December of 1951, Mrs. Anzalone came to this country to see petitioner. Whether or not petitioner sent for his wife and paid for her passage here is not clear from the evidence. The bona fide of his intentions in bringing his wife here is negatived by his subsequent conduct and attitude toward her when it was made abundantly clear to the petitioner's wife that she was not wanted in her husband's home. In a letter to the Department of Justice, Immigration and Naturalization Service, she states that petitioner met her at the boat in the morning and directed her to a subway station, keeping her there until dusk. About 9 p. m., he brought her to his home. Mrs. Nicotera was living with petitioner under the same roof. During Mrs. Anzalone's twenty-six day stay, she states, she was treated with cynicism and brutality, and on one occasion was threatened by Mrs. Nicotera with a knife. She further states that she occupied a secondary position in the petitioner's home for "the other woman ran the home." The strain of the circumstances led to her hurried return to Italy amidst promises by petitioner that he would support her. The support was not forthcoming, however, and Mrs. Anzalone writes that she has been forced to live in Italy in "embarrassing poverty" at the home of her son-in-law, a man of modest means.

■ A more liberal view of sexual behavior has been taken by the courts in the past decade when passing on the moral character of petitioners for naturalization. Petitions of Rudder, 2 Cir., 1949, 159 F.2d 695; Schmidt v. United States, 2 Cir., 1949, 177 F.2d 450; and In re Manfredi (United States v. Manfredi), 3 Cir., 1948, 168 F.2d

752. This court also recognizes the rather liberal attitude taken by the public in the United States of adultery, seduction, rape, and other equally intriguing human aberrations. Yet we must not forget that our civilization is built around a family relation which should be kept as sacred as possible if we are not to become an amoral people.

■ In consideration of petitioner's behavior towards his wife and child, and on the basis of In re Matura, D.C.S.D.N.Y. 1949, 87 F.Supp. 429, wherein the petition was denied on the ground that the petitioner by abandoning his wife and child abroad and living as husband and wife with another man's wife in this country, was guilty of morally reprehensible conduct, the petition for naturalization is denied.

An order may be submitted in conformity with the opinion herein expressed.