**Petition of BENITEZ.**

No. 585715.

United States District Court
S. D. New York.

June 30, 1953.

Edward J. Shaughnessy, New York City, District Director, Immigration & Naturalization Service.

Monroe Kroll, New York City, U. S. Naturalization Examiner.

Victor Hirshfield, Flushing, N. Y., for petitioner.

MURPHY, District Judge.

This is a petition for naturalization by Jesus Leonides Benitez, and the only question presented is one of statutory "good moral character" in the face of admitted adultery, fornication and illicit cohabitation.

So far as here relevant, the facts found indicate that petitioner is a native and citizen of Cuba, 36 years of age and a seaman continuously employed in runs principally between New York and Cuba from 1942 to 1950. From about December, 1942 to the end of 1950, petitioner openly lived and cohabited with a certain woman who used his name and was known as his wife. During this period petitioner had never been married to anyone but his consort was the lawful wife of another man, and this fact was known to petitioner. Two children were born of this relationship, one in 1945, another in 1947, and these together with a legitimate one born to this hapless woman in 1938, comprised the social unit supported by petitioner during these years.

What vagaries of human emotions disrupted this union can only be surmised. By the end of 1950, petitioner and this woman were no longer together. Petitioner had paid attorneys' fees for an Enoch Arden dissolution of this woman's marriage, which was granted her pursuant to Section 7–a of the New York Domestic Relations Law, Consol.Laws, c. 14, on May 23, 1951. On September 25, 1952, this woman gave birth to her fourth child, her third out of wedlock, with still another man as progenitor, according to an affidavit obtained from her by petitioner's attorney. Meanwhile, petitioner had married another woman on January 21, 1952, after filing this petition. This woman, a resident and citizen of the United States, obtained a divorce from her first husband in Cuba after spending 36 days there. The decree prohibited her remarriage for 301 days, and the ceremony in New York with petitioner took place within that period. In her application for license she falsely stated to petitioner's knowledge that she had not been married before.

The Nationality Act of 1940, formerly 8 U.S.C.A. § 707(a)(3), now 8 U.S.C.A. § 1427(a)(3), provides, "No person * * * shall be naturalized unless such petitioner, * * * during all the period referred to in this subsection has been and still is a person of good moral character".

Acknowledging that perhaps "the statute imposes upon courts a task impossible of assured execution", Johnson v. United States, 2 Cir., 186 F.2d 588, 589, we ap-

proach the standard of good moral character simply as one expressing "the judgment of the *average* conscience as to the minimum standard of Right." Kenny, Outlines of Criminal Law, 13th Ed., 26. For about eight years, petitioner maintained a relationship which has long been characterized as criminal under the penal codes of all but one of the States. Considered as lewd and notorious cohabitation, it is proscribed in some twenty-eight States. Viewed merely as fornication, it is criminal in all but fourteen States. And in the perspective of adultery, it is punishable in all but four States. It may be that these statutes are only selectively enforced. It may also be the case that petitioner's behavior could not alarm the community in the sense of one who commits aggressive crimes without the consent and cooperation of his victims. Nevertheless, considered as adultery, this behavior is made felonious in about thirteen States, according to the possible maximum penalty prescribed, and is also criminal in New York, domicile of petitioner and situs of his behavior. In holding a single admitted act of adultery sufficient to bar an alien from citizenship, the court observed in Estrin v. United States, 2 Cir., 80 F.2d 105: "[T]he applicant has the burden of showing by satisfactory evidence that he measures up to the required standards [citing case]. Adultery is a crime under the penal law of New York, where the petitioner resided and committed the act relied upon to exclude him from citizenship [citing statute]. No argument is needed to support the assertion that it is offensive to the generally accepted moral standards of the community." We are reminded later by the same court that this decision "still holds good." Johnson v. United States, supra, 186 F.2d 588, 589. See also Petition of Pacora, D.C.S.D.N.Y., 96 F.Supp. 594; In re Matura, D.C.S.D.N.Y., 87 F.Supp. 429. Moreover, under the act of June 27, 1952, c. 477, 66 Stat. 166, 8 U.S.C.A. § 1101, it is now provided:

"(f) For the purposes of this chapter—

"No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was—

"(1) * * *

"(2) one who during such period has committed adultery".

Remaining is the question whether or not there are in this case "extenuating circumstances" which might palliate this evidence prima facie at odds with good moral character. In Petitions of Rudder, 2 Cir., 159 F.2d 695, there were four cases involving proper exercise of the district judge's discretion in admitting to citizenship petitioners whose good moral character was in question. Two had been living with women who were separated from their husbands and who were married to petitioners as soon as they were freed from their first husbands by death or divorce. A third was living with a woman divorced from her husband but who had neglected to obtain leave from the proper court to remarry as required by governing State law. The fourth petitioner had been separated from his wife for some fifteen years and living with an unmarried woman whom he would have married if he could. The court explicitly adhered to the decision in Estrin v. United States, supra, 80 F.2d 105, but distinguished "long-term, faithful relationships between couples who consider themselves and are considered by their neighbors as upright and decent husbands and wives and would willingly have made legitimate their status if they could", from ones where "the sexual intercourse accepted as proof of lack of good moral character was prompted by lust." Id., 159 F.2d at page 698. The instant case was not one which culminated in marriage when marriage was lawfully possible. When such time finally arrived, petitioner underwent a marriage ceremony with another woman whose decree of divorce was of questionable validity and under circumstances of concealment of her former marriage within the knowledge of petitioner which brought him perilously close to the line of bigamy. What "prompted" the first relationship is explained by petitioner's response to the examiner's interrogatory:

"Q. If you felt at the beginning of your relationship with Edna that you

did not really love her, why did you continue to have children? A. It is a very difficult question to answer. Since I am a seaman, when a seaman comes to port, we need a woman."

In passing, it should also be noted that petitioner's explanation that the termination of his first relationship was occasioned by the infidelity of the woman was first offered two months after his initial interrogation.

Petition for naturalization denied.