Myer KLIG, Petitioner-Appellant,

v.

UNITED STATES of America,
Respondent-Appellee.

No. 182, Docket 26471.

United States Court of Appeals
Second Circuit.

Argued March 9, 1961.

Decided Nov. 16, 1961.

Cammer & Shapiro, New York City (Harold I. Cammer, New York City, of counsel), for petitioner.

Morton S. Robson, U. S. Atty., Southern Dist. of New York, New York City (Charles J. Hartenstine, Jr., Sp. Asst. U. S. Atty., New York City, of counsel), for respondent.

Before MAGRUDER,* WATERMAN and MOORE, Circuit Judges.

WATERMAN, Circuit Judge.

On April 14, 1958, Myer Klig filed a naturalization petition in the United States District Court for the Southern District of New York. The petition was denied. The court found that during the hearing on the petition Klig testified falsely concerning his participation in four Communist Party activities in Canada twenty to twenty-five years earlier, and that this false testimony was given for the purpose of obtaining a benefit under the Immigration and Nationality Act of 1952, 8 U.S.C.A. §§ 1101–1503. Hence the court concluded that the petitioner was not a person of good moral character and therefore could not be naturalized.

We reverse the order below and remand the case for further consideration on the merits in the light of this opinion.

Appellant is a 57 year old native of Russia. In 1921, at the age of 17, he migrated to Canada. Seven years later, at the age of 24, he joined the Communist Party of Canada. He testified that he remained a member of that Party until 1932 when the Canadian Government declared that membership in the Communist Party was illegal, and that then, as he did not wish to break the law, he voluntarily left the party. However, he continued to believe in the Communist ideology until he lost faith in it as a re-

* Sitting by designation.

sult of the Nazi-Soviet pact in 1939. From 1932 to 1939 appellant was active in various Canadian "left-wing" labor organizations and on one occasion during that period sought election to the Ontario Parliament under the Communist label. Appellant distinguished a "Communist" candidate from a "Communist Party" candidate by stating that the former, such as he, believed in the principles of communism and by standing for election sought to have a Communist Party restored to a legal status in Canada, while the latter supported the illegal insurrectionist communist organization and presumably could not appear on the ballot.

After June 1937, appellant and his family lived in the United States. He was admitted to this country for permanent residence in 1941. From the moment he entered the United States he has been actively engaged in the labor union movement and has been regularly employed therein. He was so employed at the time of his naturalization hearing nearly 20 years after his entry as a permanent resident. There was testimony at the hearing that appellant at no time during this 20 year period of continuous residence and employment in the United States had been a member of the Communist Party or been active in communist causes. Moreover, appellant has declared that he is now opposed to communism and that without any reservations whatsoever he supports the American form of government. This testimony of his, testimony covering the most recent 18 years of his life, was uncontroverted in any particular by the Immigration and Naturalization Service (INS).

At the hearing before Judge Edelstein on May 25, 1959, the INS sought to establish that appellant had attended Communist Party meetings in New York City in 1936–1938. At the conclusion of that hearing the Service asked the judge for an adjournment to obtain evidence to corroborate the testimony of its witness concerning these meetings. At the reopened hearing on June 9 and 11, 1959, instead of offering evidence concerning Klig's alleged Communist Party activity in New York City, the INS concerned itself solely with attacking appellant's statement that he terminated his connection with the Canadian Communist Party in 1932. The Service presented two witnesses who testified to Klig's continued participation during the period from 1932 to 1938 in Canadian Communist Party affairs through attendance at certain functions of the Party in Toronto. Both of these witnesses were admittedly members of the Canadian Communist Party during those years and both terminated their affiliation with it later than the time when appellant claimed to have severed his connection. Appellant categorically denied attending any Communist Party affairs during the period about which these witnesses testified. Moreover, he denied ever knowing one of the two, and said that his casual acquaintance with the other one arose from the latter's activities in the Canadian labor movement. But the district judge accepted the testimony of the two witnesses rather than that of appellant and chose to believe that appellant had attended two closed meetings of the Canadian Communist Party, one in the fall of 1932 as testified to by one witness, and the second on April 14, 1937, as testified to by the other witness. The judge further accepted the testimony of one of the two witnesses that in January or February of 1935 appellant had attended and had lectured at a school conducted by the Canadian Communist Party, and that during 1938 appellant had been present at the Party headquarters in Toronto.

These facts, so found, in and of themselves would not have disqualified appellant from citizenship. However, based upon his findings of these facts, the judge also found that appellant had testified falsely at the naturalization hearing in denying his presence at the Party functions testified to by the two government witnesses. And as this testimony, so found to be false, was given at a hearing on a naturalization petition, the judge further found that this false testimony was given by appellant for the purpose of obtaining a benefit under the Immigra-

tion and Nationality Act of 1952, 66 Stat. 166 (1952), 8 U.S.C.A. §§ 1101–1503. Hence, pursuant to section 101(f) (6) of that Act, 66 Stat. 175 (1952), 8 U.S.C.A. § 1101(f) (6),[1] the judge held that appellant had failed to establish his good moral character during the five year period preceding the filing of his petition for naturalization and consequently appellant had failed to meet the prerequisite for naturalization set forth in Section 316(a), 66 Stat. 239 (1952), 8 U.S.C.A. § 1427(a).[2] On November 12, 1959, on a motion for a new hearing, appellant submitted an affidavit from a former member of the Communist Party of Canada and former member of the Ontario Parliament disputing the testimony of the two witnesses for the INS. The district judge denied appellant's motion. .

An investigation of the prior history of appellant's relationship with the INS is illuminating. It appears that appellant has never denied his early involvement with the Communist Party of Canada. In December 1946, five years after entering the United States as a permanent resident, he filed a petition for naturalization. This was done only after assurance by the Central Office of the INS that his prior membership in the Canadian Communist Party would not disqualify him. Nevertheless, in February 1947, the INS began deportation proceedings

against him by issuing a warrant for his deportation. In an effort to get a hearing on his naturalization petition, the appellant, in the fall of 1948, obtained a ruling from the United States District Court for the Southern District of New York[3] that he was entitled to have his petition heard. The INS made no effort to afford him a hearing, but, instead, on July 8, 1948, required appellant to post a $2,000 bond, increased to $5,000 in August, as a condition of his enlargement on the deportation warrant. Commencing July 19, 1949, appellant was ordered to report weekly to the INS for interrogation, a procedure that was enforced for the next eight and one half years. For no apparent reason the Service detained appellant on Ellis Island for six weeks in 1950 without bail, until, pursuant to a habeas corpus hearing, Judge Ryan ordered his release. United States ex rel. Klig v. Shaughnessy, 94 F.Supp. 157 (S. D.N.Y.1950). Contemporaneously with its moves to avoid granting appellant a hearing on his naturalization petition the INS pressed for his deportation. At last, in January 1953, the Board of Immigration Appeals ordered deportation, but, upon an ancillary finding that appellant had been a person of *good moral character* for more than the five years last past, ordered that he be entitled to depart voluntarily. Appellant chose not to depart

1. The pertinent portions of 8 U.S.C.A. § 1101 provide:
   § 1101. Definitions
   *     *     *     *     *
   "(f) For the purposes of this chapter—
   "No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was—
   *     *     *     *     *
   "(6) one who has given false testimony for the purpose of obtaining any benefits under this chapter;"

2. 8 U.S.C.A. § 1427(a) reads as follow:
   "§ 1427. Requirements of naturalization—Residence
   "(a) No person, except as otherwise provided in this subchapter, shall be naturalized unless such petitioner, (1) immediately preceding the date of filing his petition for naturalization has resided

continuously, after being lawfully admitted for permanent residence, within the United States for at least five years and during the five years immediately preceding the date of filing his petition has been physically present therein for periods totaling at least half of that time, and who has resided within the State in which the petitioner filed the petition for at least six months, (2) has resided continuously within the United States from the date of the petition up to the time of admission to citizenship, and (3) during all the period referred to in this subsection has been and still is a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States."

3. Judge Coxe in Klig v. Watkins, Civ. 47–357, D.C., 84 F.Supp. 486 (October 20, 1948).

but to fight his deportation in the courts. The United States District Court for the District of Columbia agreed with the Board of Immigration Appeals that appellant's prior membership in a foreign Communist Party made him deportable. The Court of Appeals affirmed. Klig v. Brownell, 100 U.S.App.D.C. 294, 244 F.2d 742 (D.C.Cir.1957). The Supreme Court granted certiorari, Klig v. Brownell, 355 U.S. 809, 78 S.Ct. 15, 2 L.Ed.2d 28 (1957). However, the INS terminated the deportation proceedings, and the Supreme Court ordered that the judgment of the Court of Appeals be vacated and that the case be dismissed in the lower court as moot. Klig v. Rogers, 355 U.S. 605, 78 S.Ct. 532, 2 L.Ed.2d 525 (1958).

Appellant admittedly had engaged in Communist Party activity in Canada. This activity alone, occurring so many years before, would not have been a valid basis for denying the petition. See Krausse v. United States, 194 F.2d 440 (2 Cir. 1952); Dadonna v. United States, 170 F.2d 964 (2 Cir. 1948), cert. denied 336 U.S. 961, 69 S.Ct. 889, 93 L.Ed. 1113 (1949); cf. United States v. Francioso, 164 F.2d 163 (2 Cir. 1947); Petition of Zele, 127 F.2d 578 (2 Cir. 1942). If appellant had stated at his hearing that he had attended the meetings in Canada at which the two witnesses testified they had seen him, attendance at the meetings would not have disqualified him from citizenship.

By making false statements relative to certain ancient occurrences for the purpose of facilitating his naturalization a petitioner may be denied naturalization under section 101(f) (6) even though truthful statements concerning these same occurrences would not have precluded the naturalization.[4] The Supreme Court recently stated:

"Acquisition of American citizenship is a solemn affair. Full and truthful response to all relevant questions required by the naturalization procedure is, of course, to be exacted, and temporizing with the truth must be vigorously discouraged. Failure to give frank, honest, and unequivocal answers to the court when one seeks naturalization is a serious matter. Complete replies are essential so that the qualifications of the applicant or his lack of them may be ascertained. * * *" Chaunt v. United States, 364 U.S. 350, 352, 81 S.Ct. 147, 149, 5 L.Ed.2d 120 (1960).

But in the context of this case whether appellant was present at the Communist Party functions between 1934 and 1938 which the district court found he had attended is too insignificant to furnish an adequate basis for it to have found that petitioner intended to testify falsely and did so in order to obtain a benefit under the Act. Without more, these misstatements, if misstatements they were, concerning these olden affairs do not evince a lack of the good moral character required by the statute. The appellant admitted he was a member of the Communist Party of Canada until 1932 and that he did not renounce its ideology until 1939. All of these activities occurred almost a quarter of a century ago. Over such a long period memories become hazy to the extent of believing now that that which was, was not.

We do not require perfection in our new citizens. The Supreme Court has recognized this. In Chaunt v. United States, supra, that Court refused to revoke the naturalization of an alleged former communist who had falsely denied having ever been arrested. He, in fact, had been arrested three times: for passing out handbills, for making a speech in a public park, and for "general breach of the peace." The Court stated:

"While disclosure of them was properly exacted, the arrests in these cases were not reflections on the

---

4. For example, if Klig had denied that he had ever been a member of a Communist Party, such a lie perhaps would have barred him from naturalization, even though a truthful admission that he had been a Party member in the 1930's would not have barred him.

character of the man seeking citizenship. The statute in force at the time of his naturalization required that 'he has behaved as a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States' during the previous five years. These arrests were made some years prior to the critical five-year period. They did not, moreover, involve moral turpitude within the meaning of the law. Cf. Jordan v. De George, 341 U.S. 223, 71 S.Ct. 703, 95 L.Ed. 886. No fraudulent conduct was charged. They involved distributing handbills, making a speech, and a breach of the peace. In one instance he was discharged, in one instance the prosecution was 'nolled,' and in the other (for making a speech in a park in violation of city regulations) he apparently received a suspended sentence. The totality of the circumstances surrounding the offenses charged makes them of extremely slight consequence. * * *'' 364 U.S. 350, 353–354, 81 S.Ct. 147, 149 (1960).

And in Petition of Zele, 140 F.2d 773 (2 Cir. 1944), this court ordered the naturalization of the petitioner, even though he had lied as to certain facts occurring eight to ten years earlier that involved a previously denied petition for naturalization. The court labeled the petitioner's several misstatements as small, trivial, and unimportant. Cf. United States v. Francioso, 164 F.2d 163 (2 Cir. 1947); Petitions of Rudder, 159 F.2d 695 (2 Cir. 1947).

■ Appellant has been a resident of this country for 20 years. There is nothing in that 20 years to which the INS can point which reflects poorly on appellant's character. He has been steadily employed and is law-abiding. He is married to an American citizen. His children are citizens and they reside here. Despite this, his petition for naturalization has been denied because at a postponed hearing, requested by the Service for a different purpose, two persons testified differently from him about minor events that transpired more than 20 years earlier. Furthermore, it appears from a late-filed affidavit of a prominent Canadian that at a reopened hearing appellant's recollection will be corroborated. Under all the circumstances we believe that appellant is entitled to a rehearing.

Accordingly, the order denying the petition is reversed and the cause is remanded to the district court for further consideration.