### In re Petition for Naturalization of Antonios SOUSOUNIS.

### No. 218923.

United States District Court
E. D. Pennsylvania.

Feb. 18, 1965.

Herbert M. Levy, Philadelphia, Pa., for Immigration & Naturalization Service.

Filindo B. Masino, Philadelphia, Pa., for petitioner.

KRAFT, District Judge.

Before us is the petition of Antonios Sousounis for naturalization which is opposed by the Immigration and Naturalization Service on the ground that petitioner has failed to establish that he has been a person of "good moral character" during the three years preceding the filing of his petition, within the meaning of § 316(a) of the Immigration and Nationality Act of 1952, 8 U.S.C. § 1427(a), as modified by § 319(a) of the Act, 8 U.S.C. § 1430(a).

Petitioner, aged 33 years, is a native and national of Greece, and on March 15, 1956, while unlawfully in the United States and awaiting deportation, petitioner married a native born citizen of the United States. Thereafter, he returned to Greece and thence came back

to the United States to which he was lawfully admitted for permanent residence on November 16, 1956. Following his lawful admission, petitioner resided with his wife who bore him two children. The children presently reside with their mother from whom, at the last hearing before the Examiner, petitioner was separated. The petition for naturalization was filed September 14, 1961.

The Examiner's conclusion that petitioner has failed to establish good moral character during the period required by law was based largely on the finding that "petitioner has been involved in extramarital activities with a teen-age girl." There was, however, no finding of any indecent or immoral acts, and no finding of any circumstances to support an inference of such conduct.

Petitioner admittedly associated with this girl, who was fifteen or sixteen years old, from early in 1961 to perhaps the middle of 1962. The evidence is somewhat vague on the point. At any rate, petitioner was living with his wife during this period. He stated that he met the girl once or twice a week "around 52nd Street", that they "just ride around" in his automobile, that they never went to taprooms, or drank. On two occasions, petitioner stated, he took the girl on visits aboard a ship, apparently in company with a member of the crew and another girl. Petitioner stated that he was never alone with the girl. He was corroborated in this by the girl's own statement in the course of an interview, the report of which was made part of the record.

The Examiner further found that petitioner did not voluntarily provide sufficient support for his family at all times. We are not satisfied that the record supports this finding. Difficulties arose between petitioner and his wife, about June 1961, because of petitioner's trip to Greece to see his desperately ill father. Petitioner's account of the support matter, which was uncontradicted, was as follows:

"A. Yes. My brother send me telegram and I tell it to my wife I have to go in Greece, and she's say: 'You have to stay home,' and I work and I give her every week all my pay. When I'm come back from Greece, I say: 'I give you $50.00 a week,' she say: 'No, I want you to give me all the pay.' I say: 'I don't give you all the pay. Sometimes I need $5.00.' She say: 'No, I don't want you to have it.' She's make me mad. I give her for food every week, I pay for my children the food, clothes, I paid. She's take me into Court because she say: 'I want the full pay,' and they gave her $45.00 every week. Now give her $45.00, before it's cost me more money before I go to Court."

The evidence discloses that the support order was later reduced to $30 per week for the two children, and suspended as to the wife, without prejudice. While there was evidence that petitioner was in arrears in the sum of $80 on June 27, 1963, petitioner denied the arrearage in his testimony before the Examiner on July 29, 1963.

Finally, the Examiner found that petitioner's testimony "was vague and unresponsive and sometimes untruthful." One can gain that impression at first reading. However, repeated readings and thorough study of the record persuade us that much of petitioner's apparent vagueness and evasiveness was the result of language difficulties. We think that, on the whole, and generally speaking, petitioner made an honest effort to understand, and to answer truthfully, the questions propounded to him.

The burden was on petitioner to establish good moral character. Any doubt with respect thereto must be resolved in favor of the Government. United States v. Schwimmer, 279 U.S. 644, 650, 49 S.Ct. 448, 73 L.Ed. 889 (1929).

"Good moral character" is an impalpable and elusive concept, and it is difficult

to formulate any satisfactory criterion by which to evaluate it. Schmidt v. United States, 177 F.2d 450 (2nd Cir. 1949). In In Re Mayall's Naturalization, 154 F.Supp. 556, 560 (E.D.Pa. 1957), Judge Ganey stated:

"In order to determine whether a petitioner has met his burden of establishing that he is a person of good moral character, we must first ascertain whether Congress has labeled, directly or by implication, the conduct in question as not measuring up to good moral character. For example, see In re Lee Wee's Petition, D.C.S.D.Cal.1956, 143 F.Supp. 736. When Congress is silent on the question, we should see if the petitioner's character coincides with the generally accepted mores or standards of the average citizen of the community in which the petitioner resides. Brukiewicz v. Savoretti, 5 Cir., 1954, 211 F.2d 541; In re Mogus, D.C.W.D.Pa.1947, 73 F. Supp. 150; In re Markiewicz, D.C. W.D.Pa.1950, 90 F.Supp. 191. The personal view of the judge who is ruling on the petition is of no importance. If the petitioner's conduct fails to satisfy the community test, then we should see whether the 'common conscience', when it is possible of being ascertained, of the country as a whole also looks disfavorably upon such conduct. See United States v. Francioso, 2 Cir., 1947, 164 F.2d 163; Johnson v. United States, 2 Cir., 1951, 186 F.2d 588; Petition of F——— G———, D.C.S.D. N.Y.1956, 137 F.Supp. 782, 785. The collective viewpoint of the individual states and territories as expressed through their laws, statutory and decisional, is acceptable evidence of that common conscience." See, also, In re Naturalization of Denessy, 200 F.Supp. 354 (D.Del. 1961).

The only element in this case which has given us pause is petitioner's association with the young girl mentioned in the evidence. Such relationship, in the circumstances, is bound to cause suspicions. However, under the evidence, we cannot say that, ipso facto, it shows lack of good moral character, indiscreet or ill-advised as it may have been. "We do not require perfection in our new citizens." Klig v. United States, 296 F.2d 343, 346 (2nd Cir. 1961).

Accordingly, we make the following

## ORDER

Now, February 18th, 1965, it is ordered that the recommendation of the Examiner that the petition be denied on the ground that petitioner has failed to establish good moral character during the period required by law be, and it is, overruled, and the petition is approved.