**UNITED STATES ex rel. MITTLER v. CURRAN, Commissioner of Immigration.**

(Circuit Court of Appeals, Second Circuit. June 8, 1925.)

No. 369.

Aliens ☞53—"Practicing prostitution," warranting deportation, not shown by evidence.

"Practicing prostitution," warranting deportation of alien, *held* not shown by the evidence; proof at most being of an isolated act, and not at all of pursuing the habit as a vocation.

Appeal from the District Court of the United States for the Southern District of New York.

Habeas corpus by the United States, on the relation of Ben. B. Mittler, as next friend of Orsola Sabino, against Henry H. Curran, Commissioner of Immigration. Discharge granted, and respondent appeals. Affirmed.

The woman on whose behalf this writ was obtained was born in Italy 28 years ago; her father came to America about the time of her birth; his wife followed when relator was 18 months old. Since that time the parents have lived in this country, have had several other children born here, but have themselves never been naturalized. Both parents are unable to sign their names. At the age of about 20 relator was married to one Sabino, an unnaturalized Italian, by whom she had one child, born in this country. Some 3 years ago she separated from Sabino, leaving her child with him. She then took to living with one Giovanni Balleiri, or John Blair, and she herself became known as Alice Blair.

On January 4, 1924, a policeman of New York City complained against her in a City Magistrate's Court, as a "vagrant," under a section of state law which makes any woman a "vagrant" who "offers to commit prostitution." She was convicted, and found to be afflicted with some venereal disease. She was committed to a hospital for care, and then sent cured to the Home of the Good Shepherd, where she was when deportation proceedings were begun.

At the special hearing she admitted conviction, but denied the truth of the police story which the magistrate had believed, viz. that, having taken $5 from the officer, she had agreed, in the tenement where she lived with Blair, to grant said officer carnal intercourse with herself, shortly before she was arrested. The woman spoke idiomatic English, could not apparently sign her name, and was unrepresented by counsel at hearing; but her parents appeared (wishing to take her with them), and the father fully corroborated her story of coming to America in infancy, of having no kin or friends in Italy, and of never having been in Italy since she left.

The Labor Department ordered deportation September 18, 1924, on the ground that the woman "has been found practicing prostitution after her entry into the United States," in violation of Immigration Act of February 5, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 959, 960, 4289¼a–4289¼u). Habeas corpus proceedings having been instituted in her behalf, she was discharged below. The government appealed.

Emory R. Buckner, U. S. Atty., of New York City (James C. Thomas, Asst. U. S. Atty., of New York City, of counsel), for appellant.

John Palmieri, of New York City, for appellee.

Before HOUGH, MANTON, and HAND, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). Drastic as is the statute under which this deportation is ordered, we do not admit that it was meant to apply or does apply to persons so utterly separated from all countries but this, so completely a product of the United States, and so native in everything but the accident, of birth, as is this young woman. To prevent the hypocritical injustice involved in sending to Italy as to her home this product of American conditions, who knows considerably less about the land to which she is ordered than a reasonably intelligent American tripper does after one summer there, recourse might and should be had to Holy Trinity Church v. United States, 143 U. S. 457, 12 S. Ct. 511, 36 L. Ed. 226, and its doctrine of statutory construction.

We need not go so far, but do hold that the evidence was insufficient to warrant a holding that the woman was "practicing prostitution." In that common or ordinary parlance which legislative draftsmen are presumed to use, the phrase means to pursue as a business or occupation the sale of one's body for carnal intercourse. Cent. Dict. The proof is at best (or worst) of an isolated act, and there is no evidence at all of pursuing the habit as a vocation. Unchastity is not proof of prostitution; and a single instance, even of sale, may or may not be evidence of "practicing" prostitution. If by a street walker, it probably would be; but here the surrounding circumstances repel the pursuit of a business, or of "practicing," which the statute requires. It is noticeable that the same statute under which relator was convicted makes a vagrant of a "common prostitute," and she was not prosecuted under that section. That is a phrase applicable to one who "practices" prostitution. This woman could not reasonably have been convicted of being "common," nor of "practicing."

Order affirmed.