Myer KLIG, Appellant,

v.

Herbert BROWNELL, Attorney General of the United States, Appellee.

No. 12846.

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 25, 1956.

Decided April 4, 1957.

Washington, Circuit Judge, dissented.

Mr. David Carliner, Washington, D. C., with whom Mr. Jack Wasserman, Washington, D. C., was on the brief, for appellant.

Mr. John W. Kern, III, Asst. U. S. Atty., with whom Messrs. Oliver Gasch, U. S. Atty., Lewis Carroll and Joseph M. Ryan, Jr., Asst. U. S. Attys., were on the brief, for appellee. Mr. Leo A. Rover, U. S. Atty., at the time record was filed, also entered an appearance for appellee.

Before WASHINGTON, DANAHER and BASTIAN, Circuit Judges.

DANAHER, Circuit Judge.

Appellant has appealed from an adverse judgment in an action seeking declaratory relief from an order of deportation.

Appellant, a native of Russia, became a naturalized citizen of Canada, where, admittedly, he was a member of the Communist Party of Canada from 1929 to July, 1932. He was admitted to the United States for permanent residence in April, 1941. Later, after a visit to Canada, he was readmitted to the United States in December, 1945, upon presentation of a Resident Alien's Border Crossing Identification Card. Deportation proceedings were commenced against him in February, 1947, followed by hearings which culminated in a final order of deportation in August, 1951. The Board of Immigration Appeals reviewed and affirmed the Assistant Commissioner's order, and after rehearing, having found Klig possessed of good moral character over the past five years, on June 12, 1953, granted voluntary departure. Appellant argues that he was legally admitted to the United States in 1941 and again in 1945; that an alien so admitted is not presently deportable under Section 22 of the Internal Security Act of 1950[1] because of past membership in the Communist Party of Canada; and that the Act is prospective and requires the deportation only of those excludable after 1950, or those who became members of subversive organizations in the United States.

The Board of Immigration Appeals summarized its understanding of appellant's position thus:

"* * * In other words, the argument is that, under the Amendment made by the Internal Security Act, a person who was a member of the Communist Party of Canada and whose membership had terminated prior to his application for admission to this country can be excluded, but that the same person, if he succeeds in illegally entering the United States, is immune to deportation under Section 4(a)."

1. C. 1024, 64 Stat. 1006–1008.

The Act of October 16, 1918,[2] "An Act To exclude and expel from the United States aliens who are members of the anarchistic and similar classes," provided for the exclusion of certain enumerated classes of aliens who were declared not eligible to be admitted to the United States. The Act further provided for the deportation of an alien who *at any time* after entering was found to have been at the time of entry, or who thereafter became, a member of any of the proscribed classes.

The Court held[3] that the Act did not provide for the deportation of an alien, who, *after* entry, became but later and before his arrest, relinquished his status as, a member of an organization, membership in which at the time of entry would have rendered him excludable. "If Congress meant that past membership, of no matter how short duration or how far in the past, was to be a cause of present deportation the purpose could have been clearly stated. The section does not bear this import."

Congress, thereupon, in Sec. 23 of the Alien Registration Act 1940,[4] amended the first paragraph of section 1 of the 1918 Act to read:

"That any alien who, at any time, shall be or *shall have been* a member of any one of the following classes shall be excluded from admission into the United States." (Emphasis supplied.)

Congress went farther. The 1918 Act "To exclude and expel" was further amended by the 1940 Act in that Section 2 was caused to read:

"Sec. 2. Any alien who *was at the time of entering* the United States, or has been at any time thereafter, a member of any one of the classes of aliens enumerated in section 1 of this Act, shall, upon the warrant of the Attorney General, be taken into custody and deported in the manner provided in the Immigration Act of February 5, 1917. The provisions of this section shall be applicable to the classes of aliens mentioned in this Act, irrespective of the time of their entry into the United States." (Emphasis supplied.)

Congress flatly said that this Government will not receive certain classes of alien immigrants and will not harbor persons whom it does not want or whose presence is deemed hurtful to the United States. When the Court considered the cases of three persons whose past, but relinquished, membership in the Communist Party was relied upon as a ground for deportation, it observed that Congress had legislated with the Kessler language, supra, in mind. The 1940 amendment was found to be definitive and positive. "In the Act here before us [Congress] supplied unmistakable language that past violators of its prohibitions continued to be deportable in spite of resignation or expulsion from the party."[5] Mr. Justice Frankfurter, concurring, put it this way:

"But the underlying policies of what classes of aliens shall be allowed to enter and what classes of aliens shall be allowed to stay, are for Congress exclusively to deter-

2. 40 Stat. 1012, as amended June 5, 1920, 41 Stat. 1008.

3. Kessler v. Strecker, 1939, 307 U.S. 22, 29, 59 S.Ct. 694, 698, 83 L.Ed. 1082.

4. 54 Stat. 673.

5. Harisiades v. Shaughnessy, 1952, 342 U.S. 580, 593, 72 S.Ct. 512, 521, 96 L.Ed. 586; cf. Remarks of Congressman Hobbs, 86 Cong.Rec. 9032 (1940), and of Congressman Cellar, 86 Cong.Rec. 9035 (1940), as to the retroactive effect of

the Amendment. It may be noted in passing that Congress in Section 20(c) of the 1940 Act expressly excluded as eligible for suspension of deportation, members of the proscribed classes reached by the retroactive amendment; in Section 22 of the Act deportability for past violations was expressly denied as to classes of aliens coming within Sections 20 and 21. That Congress was fully aware of the retroactivity of Section 23 of the 1940 Act cannot be doubted.

mine even though such determination may be deemed to offend American traditions and may, as has been the case, jeopardize peace."[6]

But, appellant argues, the classes of excludable aliens reached by the 1918 Act did not include those who might be members of the Communist Party of *Canada*. The 1918 Act, so far as is here pertinent, had as its targets, aliens who are anarchists, aliens who advocate the overthrow by force and violence of the *Government of the United States*, those who entertain or teach disbelief in organized government, and otherwise as therein spelled out. It was not shown that membership in the Communist Party of Canada brought appellant within any such sweep, he claims, and thus his 1941 entry and the 1945 reentry were lawful. Hence Klig is not now deportable, he says. However, in addition to the meeting the time element, thus negating the effect of the Kessler v. Strecker rule (supra note 3), Congress removed the need for proof on a case by case basis, which Klig's argument fails to take into account.

"The Internal Security Act of 1950 [64 Stat. 987, 1006–1008] dispensed with the need for such proof. On the basis of extensive investigation Congress made many findings, including that in § 2(1) of the Act that the 'Communist movement * * * is a worldwide revolutionary movement whose purpose it is, by treachery, deceit, infiltration into other groups (governmental and otherwise), espionage, sabotage, terrorism, and any other means deemed necessary, to establish a communist totalitarian dictatorship,' and made present or *former membership* in the Communist Party, *in and of itself*, a ground for deportation. Certainly, we cannot say that this classification by Congress is so baseless as to be violative of due process and therefore beyond the power of Congress."[7] (Emphasis supplied.)

The Act thus expanded earlier law and prescribed that aliens who at any time "shall have been" members of any of the defined classes are to be excluded and deported. Specifically embraced within such classes were aliens who in the past had been members of "the Communist or other totalitarian party * * * of any foreign state * * *." Certainly that language included past membership in the Communist Party of Canada.[8]

Not only did Congress thus dispense with the necessity of proof in each individual case, as Mr. Justice Frankfurter noted, Section 22 of the Internal Security Act of 1950, amending the Act of 1918, provided a very real distinction between the groups of aliens mentioned in Section 1(1) and (3) and those aliens reached by Section 1(2). The

6. Id. 342 U.S. at page 597, 72 S.Ct. at page 523.

7. Galvan v. Press, 1954, 347 U.S. 522, 529, 74 S.Ct. 737, 742, 98 L.Ed. 911.

8. See Sec. 22, 64 Stat. 1006 et seq. Sequential excerpts from this section disclose the amendments to the 1918 Act which are pertinent here:
"Sec. 22. The Act of October 16, 1918, as amended * * * be, and the same is hereby, amended to read as follows:
" 'That any alien who is a member of any one of the following classes shall be excluded from admission into the United States:
" '(1) * * *

" '(2) Aliens who, at any time * * * shall have been members of any of the following classes:
" '(C) Aliens who are members of or affiliated with * * * (iv) the Communist or other totalitarian party * * * of any foreign state * * *.
" 'Sec. 4(a) Any alien who was at the time of entering the United States * * * a member of any one of the classes of aliens enumerated in section 1(2) of this Act, shall * * * be * * * deported * * *. The provisions of this section shall be applicable to the classes of aliens mentioned in this Act, irrespective of the time of their entry into the United States.' "

latter subsection proscribed as excludable those "Aliens who, at any time, shall be or shall have been members of any of the following classes: * * *" so that even past membership in any of the enumerated classes constituted a bar to admission into the United States. The Act carried out the same motif in Section 4(a), touching deportability. The language carefully was designed to reach, and did reach the groups of aliens defined in Section 1(1) and (3) in terms of their membership, either at the time of entering the United States or at any time thereafter, so that, not past membership, but present or future membership must be shown as to the aliens referred to in Section 1(1) and (3). But as to those coming within Section 1(2) it was not a case of present or future membership only; rather, Section 1(2) included as a group those aliens who, at any time, shall be or *shall have been* members of any of the enumerated "following classes." The language is clear as was the Congressional purpose.[9]

The sweep of the Act is vast. Whatever refinements in its impact may exist in some circumstances have no application here. As Mr. Justice Frankfurter observed:

"It must be concluded, therefore, that support, or even demonstrated knowledge, of the Communist Party's advocacy of violence was not intended to be a prerequisite to deportation. It is enough that the alien joined the Party, aware that he was joining an organization known as the Communist Party which operates as a distinct and active political organization, and that he did so of his own free will. A fair reading of the legislation requires that this scope be given to what Congress enacted in 1950, however severe the consequences and whatever view one may have of the wisdom of the means which Congress employed to meet its desired end."[10]

To recapitulate: under the 1940 Act, amending the 1918 Act, Klig was excludable because he had been a member of the proscribed class and on that account was deportable upon a showing that the party to which he had belonged, in fact advocated the violent overthrow of the Government. Under the 1950

9. S.Rep. No. 1515, pursuant to S.Res. 137 (1947), 81st Cong., 2d Sess. (1950), reflects the extended inquiry of the Committee on the Judiciary throughout a period of nearly three years. In its Ch. II, dealing with various aspects of its studies concerning subversive aliens, the Report deals with the background of, and the Congressional purpose reflected in, section 1(2) of section 22, of the Internal Security Act. The Report at p. 799 refers to the "new class of excludables" to include alien members of the Communist Party of any foreign state, regardless of the name "such party may have used, may now bear, or may hereafter adopt. An alien who at any time shall be or shall have been a member of that class of excludables irrespective of the date of his entry, shall be excluded and, if admitted, shall be deported. The subcommittee intends that the class shall include all aliens who are, have been, or may hereafter become members of or affiliated with the Communist or other totalitarian parties, and the language of the bill is so drawn as to prohibit such persons regardless of whether any proscribed party may change its name to avoid the consequences of the provision. The proscription of the Communist Party and its affiliates by name is not to be construed as a declaration that the Communist Party does not advocate the overthrow of the Government by force and violence." In addition to expansion of the 1918 Act, as amended, to include those coming within Section 22, § 1(2) (C), the Report treated of new classes of proscribed excludable and deportable aliens, comprehended within subsections (D) to (H), inclusive, after which, the Report explained, "past membership, as well as present, subjects the alien to exclusion and deportation."

It is difficult to see how Congress could more fully or more explicitly have written into law its intention and its purpose than is thus revealed.

10. Galvan v. Press, supra note 7, 347 U.S. at page 528, 74 S.Ct. at page 741.

Act, the need for such proof was dispensed with. Thus Klig's past membership in the Communist Party of Canada predicated his deportability under § 22 of the Internal Security Act of 1950. "[W]e must adopt the plain meaning of a statute, however severe the consequences."[11]

Appellant has placed substantial reliance upon Berrebi v. Crossman.[12] Citing no authority, the opinion seems to have overlooked the purpose of Congress, so clearly stated, with reference to the 1940 amendments, supra, which afforded the background for and contained the counterpart language followed and expanded in the 1950 Act, supra. Of course, too, the court lacked the benefit of the later discussion in Galvan v. Press, supra, which contained no reference to Berrebi. Nor has the case been cited in any other opinion coming to our notice. We are persuaded that appellant's reliance on Berrebi is misplaced, and we are cited to no authority contrary to the views we have expressed.

The status of Klig is not affected by the Immigration and Nationality Act,[13] for the proceedings here were under the 1950 Act. The Board of Immigration Appeals and Judge McGarraghy correctly concluded that the appellant must be held deportable.

Affirmed.

11. Jay v. Boyd, 1956, 351 U.S. 345, 357, 76 S.Ct. 919, 927, 100 L.Ed. 1242.

12. 5 Cir., 1953, 208 F.2d 498, Circuit Judge Russell dissenting.

13. Act of June 27, 1952, 66 Stat. 163. Compare the applicable provisions of this Act with the extracts from the Internal Security Act appearing in note 8 supra. The 1952 Act, so far as is presently pertinent, reads:
  "Sec. 212(a) * * *, [T]he following classes of aliens * * * shall be excluded from admission into the United States:
  * * * * *
  "(28) Aliens who * * * at any time have been, members of any of the following classes:
  * * * * *

WASHINGTON, Circuit Judge, (dissenting).

This case presents a narrow problem of statutory construction: whether a resident alien who was a member of the Communist Party of Canada *prior to his entry* into the United States and at no time thereafter, is deportable under Section 22 of the Internal Security Act of 1950. The issue is not whether membership in the Communist Party *after* entry but prior to the passage of the Act is ground for deportation under the above section; plainly it is. Galvan v. Press, 1954, 347 U.S. 522, 74 S.Ct. 737. The issue is not whether appellant Klig would be excludable if he applied for entry today; plainly he would be. 8 U.S.C.A. § 1182(a) (28) (C) (iv). Nor is the issue whether Klig illegally entered this country: the Government makes no such claim.

Klig last entered this country in 1945. From 1929 to 1932 he had been a member of the Communist Party of Canada. The pertinent exclusion statute in effect in 1945 was the Anarchist Act of 1918, 40 Stat. 1012, as amended by the Alien Registration Act of 1940, 54 Stat. 673, which provided for the exclusion of alien members of an organization advocating the overthrow of the Government of the United States or of all forms of law. 8 U.S.C. § 137(c) (1946). No administrative contention was then made

"(C) Aliens who are members of or affiliated with * * * (iv) the Communist or any other totalitarian party * * * of any foreign state * * *." 8 U.S.C.A. § 1182.
  When the 1952 Act applies, not only are such aliens excludable, as provided in the Internal Security Act of 1950, but they are likewise deportable if at the time of their entry, such aliens come within one or more of the excludable classes. We excerpt from the Act the following:
  "Sec. 241(a) Any alien in the United States * * * shall * * * be deported who—
  "(1) at the time of entry was within one or more of the classes of aliens excludable by the law existing at the time of such entry." 8 U.S.C.A. § 1251.

that the Communist Party of Canada was such an organization, nor is it made now. Klig was not excluded, and resumed residence in this country.

Under present law, an alien is deportable if he "at the time of entry was within one or more of the classes of aliens excludable *by the law existing at the time of such entry*." 8 U.S.C.A. § 1251(a) (1). But the Government has not undertaken to show that Klig was excludable in 1945 "by the law existing at the time of [his] entry," and has expressly disclaimed in this court any reliance on 8 U.S.C.A. § 1251(a) (1), or its predecessor, 8 U.S.C. § 155(a) (1946).[1] Nor is it basing its action on any theory that Klig was engaged in subversive activity after entering this country, or is so engaged at the present time. Rather, the Government relies solely on Section 22 of the Internal Security Act: a section which amends Section 4(a) of the Anarchist Act of 1918 to provide for the deportation of any alien who was "at the time of entering the United States, or has been at any time thereafter" a member "of any one of the classes of aliens enumerated in section 1(2)" of the Act. Insofar as here pertinent the latter section reads:

"[Sec. 1] That any alien who is a member of any one of the following classes shall be excluded from admission into the United States:

\* \* \* \* \* \*

"(2) Aliens who, at any time, shall be or shall have been members of any one of the following classes:

"(A) \* \* \*

\* \* \* \* \* \*

"(C) Aliens who are members of \* \* \* the Communist Party \* \* \* of \* \* \* any foreign state \* \* \*.

\* \* \* \* \* \*

"(H) \* \* \*."

The question which divides us in this case is whether the reference in Section 4(a) to the "classes enumerated" in Section 1(2) of the exclusion statute incorporates only the classes enumerated in letters (A) through (H), or those classes plus the preliminary matter in (2) relating not to classes as such but to the time of membership in the classes enumerated. Under the first construction, which is mine, Section 4(a) would require the deportation of an alien who was "at the time of entering the United States, or has been at any time thereafter" a member of the Communist Party of any foreign state; this would not reach Klig. Under the other view, Section 4(a) would require the deportation of an alien who "at the time of entering the United States or at any time thereafter" was an alien "who, at any time, shall be or shall have been" a member of the class "who are members of the Communist Party" of any foreign state; the majority adopts this reading of the statute to deport Klig.

I think the first construction is very plainly the correct one. Section 4(a) refers to Section 1(2) only to incorporate "the classes of aliens enumerated" therein, and the classes of aliens are enumerated only in subsections (A) through (H), inclusive—not in the preamble which relates merely to time. Section 4(a) specifies its own time period for membership for purposes of deportation, whereas the preliminary matter of (2) states another time period for membership for purposes of exclusion. To read the exclusion time period as a nullification or amendment of the deportation time period is unjustified in the absence of plain language; here the language used clearly shows that no such implied repeal or amendment was intended. Our colleagues of the Fifth Circuit have already so concluded: Berrebi v. Crossman, 1953, 208 F.2d 498. And

1. To the extent that the majority opinion assumes that the Government's deportation order can now be supported by reliance on the section just cited it is on indefensible ground. Not only does the administrative agency itself disclaim any such view, it admits that no findings were made in the instant case which would justify the application of that view to Klig.

compare Galvan v. Press, supra, 347 U.S. at pages 525, 525 n. 2, 74 S.Ct. 737.

The premise underlying the majority's view is that the "motif" of the deportation section must parallel the exclusion statute; since the exclusion statute reaches members of classes (2) (C) regardless of the time of their membership, the court concludes that the deportation section must or should have similar effect. But the premise is not supportable. If Congress had wanted to carry out the "motif" of the exclusion statute in the deportation statute, it could simply have said "all aliens who were excludable under Section 1 are deportable" or "all aliens who at any time shall be or shall have been members of the classes excludable under Section 1 are deportable." But Congress did not so provide. The language it used cannot reasonably be construed to allow the exclusion time element to obliterate the deportation time element.

The Supreme Court has cautioned us in such matters not to "assume that Congress meant to trench on [an alien's] freedom beyond that which is required by the narrowest of several possible meanings of the words used." Fong Haw Tan v. Phelan, 1948, 333 U.S. 6, 10, 68 S.Ct. 374, 376, 92 L.Ed. 433; see also Barber v. Gonzales, 1954, 347 U.S. 637, 642, 643, 74 S.Ct. 822, 98 L.Ed. 1009. Surely, the interpretation of the statute adopted by the majority is exactly contrary to this admonition.

Not only does the statutory language itself leave no room for doubt, but a review of congressional activity in the area demonstrates that Congress did not intend to deport persons like this appellant. In 1939 a proposed amendment to the Anarchist Act of 1918 would have deleted the words "at any time after entering the United States" and substituted the words "at any time." H.R. 5138, 76th Cong., 1st Sess. (1939), 84 Cong.Rec. 10,383. There was considerable objection to such all-inclusive language. Accordingly, the deportation statute (but not the exclusion statute) was changed by the Senate Committee so as, said the Committee, "to prevent hardship on aliens who may have been, in the distant past, but who had renounced before coming to the United States, their membership." S.Rep. No. 1721, 76th Cong., 3d Sess. (1940).[2]

Did Congress change its mind in 1950, when it adopted the Internal Security Act? At one stage it evidently considered doing so.[3] But later on—when the Conference Report was written on the final legislation, H.Rep. No. 3112, 80th Cong., 2d Sess. (1950), accompanying H.R. 9490—the Report said: " * * * in general, this provision [Section 4(a)] covers those classes of aliens who * * *are* members of subversive organizations." (Emphasis added.) And when Senator McCarran explained on the Senate floor the effect of the 1950 changes in detail, he at no point suggested that membership before entry was being added as a new ground for deportation.[4] The majority finds support (fn. 9) for its conclusion in a Senate report which was issued by a subcommittee in 1950 in connection with the studies leading to recodification of all immigration laws into the Walter-McCarran Act of 1952.[5] But on its face the statute, as enacted, does not incorporate the particular view

---

**2.** The wording, as finally enacted, was changed from the 1918 version to overrule Kessler v. Strecker, 1939, 307 U.S. 22, 59 S.Ct. 694, 83 L.Ed. 1082. The 1918 language had said "at any time after entering the United States, is found *to have been* at the time of entry, or *to have become thereafter*," and the 1940 language, as enacted, said "at the time of entering the United States, or has been *at any time* thereafter." This made it clear that even brief membership was

grounds for deportation, but it must still be membership at any time "thereafter," meaning after entry.

**3.** See S.Rep. No. 2230, 81st Cong., 2d Sess. 7 (1950), accompanying S. 1832; S.Rep. No. 2369, 81st Cong., 2d Sess. 12 (1950), accompanying S. 4037.

**4.** 96 Cong.Rec. 14,179–14,180 (1950).

**5.** S.Rep. No. 1515, 81st Cong., 2d Sess. (1950).

expressed in the Senate report which is relied on by the court. The new statute abandons the technique of incorporating part of the exclusion statute in the deportation statute. It continues the form of listing classes in which membership "at any time *after entry*" is grounds for deportation. See Section 241(a) (6) (C) (iv), 8 U.S.C.A. § 1251(a) (6) (C) (iv). But these classes are now set out in the present tense, indicating that membership before entry is not a ground for deportation. And whatever doubt could possibly remain is dispelled by both the House and Senate reports accompanying the recodification, which state, referring to Section 241(a) (6):

"This class has been clarified to make it clear that aliens who are not excludable under the law existing at the time of entry because of past membership in the proscribed subversive classes are not to be deportable solely because of such past membership * * *."[6]

It is not at all incongruous to say that membership prior to entry warrants exclusion but not deportation. For it is entirely reasonable for Congress to deny admission to former Communists, no matter how far distant their membership. But as to those already here for years, who may have demonstrated desirability as residents and have acquired families and property here, different considerations enter. Congress has indicated that Communist Party membership will be considered grounds for deportation only if it occurred after entry, while the alien was enjoying United States residence. Of course, Congress may sometime say that membership before entry is a ground for deportation. But until it does so, I find no basis for holding that this alien is deportable. On the contrary, I think that Congress has specifically provided that he is *not* deportable.

6. S.Rep. No. 1137, 82d Cong., 2d Sess. 22 (1952); see also H.Rep. No. 1365, 82d Cong., 2d Sess. 60 (1952).