## BONETTI *v.* ROGERS, ATTORNEY GENERAL, *et al.*

No. 94.   Argued April 7, 1958.—Decided June 2, 1958.

*Joseph Forer* argued the cause for petitioner.  With him on the brief was *David Rein.*

*Roger Fisher* argued the cause for respondents.  With him on a brief was *Solicitor General Rankin.  Beatrice Rosenberg* was also on a brief for respondents.

Mr. Justice Whittaker delivered the opinion of the Court.

This is a deportation case. It presents a narrow and vexing problem of statutory construction. The principal question here is which, if less than all, of several entries into this country by the alien petitioner was "the time of entering the United States," within the meaning of § 4 (a) of the Anarchist Act of October 16, 1918,[1] as amended by § 22 of the Internal Security Act of 1950. 64 Stat. 1008.

The facts are clear and undisputed. Petitioner, an alien who was born in France of Italian parentage, was admitted to the United States for permanent residence on November 1, 1923, at the age of 15. He became a member of the Communist Party of the United States at Los Angeles in 1932 and remained a member to the end of 1936, when he voluntarily ceased paying dues and left the Party. He never rejoined it. On June 28, 1937, he departed the United States—abandoning all rights of residence here—and went to Spain to fight with the Spanish Republican Army.[2] He fought in that army for one year, was wounded in action and suffered the loss of his left foot. On September 19, 1938, he came to the United States as a new or "quota immigrant," and applied for admission for permanent residence. He was detained at Ellis Island. A hearing was held by a Board of Special Inquiry on the issue of his admissibility. At that hearing he freely admitted that he had been a member of the Communist Party of the United States at Los

---

[1] 40 Stat. 1012, as amended, 41 Stat. 1008, 54 Stat. 673, 8 U. S. C. § 137.

[2] He stated that he did so because he felt that Franco was a tool of Mussolini and Hitler, and if the Rome-Berlin Axis was not stopped "they would go on from country to country until the World War would start."

Angeles, California, from 1932 to 1936, and had voluntarily left the United States on June 28, 1937, to go to Spain and fight in the Spanish Republican Army. The Board ordered him excluded, but its order was reversed on an administrative appeal, and on October 8, 1938, he was admitted to the United States "for permanent residence as a quota immigrant." He has since continuously resided in the United States (California), except for a one-day visit to Tijuana, Mexico, in September 1939. "[A]t the time of entering the United States" on October 8, 1938, he was not, and has not since been, a member of the Communist Party.

In October 1951, proceedings were instituted to deport him under §§ 1 and 4 (a) of the Anarchist Act of October 16, 1918, as amended by § 22 of the Internal Security Act of 1950, as an "alien who had been a member of the Communist Party of the United States after entry into the United States." After a hearing, disclosing the facts above recited, the hearing officer ordered him deported, and the Board of Immigration Appeals affirmed.

Petitioner then brought this action in the United States District Court for the District of Columbia against respondent, praying that the order of deportation be set aside. Respondent moved for summary judgment. The district judge sustained the motion and dismissed the complaint. On appeal the Court of Appeals, finding that after petitioner's first admission for permanent residence on November 1, 1923, he admittedly had been a member of the Communist Party of the United States from 1932 through 1936, affirmed the judgment. 99 U. S. App. D. C. 386, 240 F. 2d 624. We granted certiorari. 355 U. S. 901.

The parties agree that petitioner's past Communist Party membership did not make him excludable "at the time of entering the United States" on October 8, 1938,

nor when, after his one-day visit to Mexico, he re-entered in September 1939.[3]

Section 1 of the Anarchist Act of October 16, 1918,[4] as amended by § 22 of the Internal Security Act of 1950,[5] deals with the subject of *exclusion of aliens from admission* and provides, in pertinent part, as follows:

> "[Sec. 1] That any alien who is a member of any one of the following classes shall be excluded from admission into the United States:
>
> "(1) . . . ;
>
> "(2) Aliens who, at any time, shall be or shall have been, members of any of the following *classes:*
>
> "(A) . . . ;
>
> "(B) . . . ;
>
> "(C) Aliens who *are* members of . . . the Communist Party of the United States . . . .
>
> .     .     .     .
>
> "(H) . . . ."   (Emphasis added.)

Section 4 (a) of the Anarchist Act of October 16, 1918, as amended by § 22 of the Internal Security Act of 1950, deals with the subject *of deportation* and, in pertinent part, provides:

> "Any alien who was *at the time of entering the United States, or has been at any time thereafter* . . . a member of any one of the *classes* of aliens enumerated in section 1 (2) of this Act, shall,

---

[3] The statutory provision for exclusion from admission solely by reason of membership in the Communist Party was first enacted in the Internal Security Act of 1950 (64 Stat. 1006), and therefore, petitioner was not excludable from admission, on the ground of past membership in the Communist Party, at the time he entered the United States on October 8, 1938, or at the time he re-entered, after a one-day visit to Tijuana, Mexico, in September 1939.

[4] See note 1.

[5] 64 Stat. 1008.

upon the warrant of the Attorney General, be taken into custody and deported in the manner provided in the Immigration Act of February 5, 1917. The provisions of this section shall be applicable to the *classes* of aliens mentioned in this Act, irrespective of the time of their entry into the United States." [6] (Emphasis added.)

The sense of the two amended sections, as applied to this case, is this: Any alien who was at the time of entering the United States, or has been at any time thereafter, a member of the Communist Party of the United States shall, upon the warrant of the Attorney General, be taken into custody and deported in the manner provided in the Immigration Act of February 5, 1917.

Petitioner contends that it was his entry of October 8, 1938, made after the administrative adjudication of that date that he was admissible "as a quota immigrant for permanent residence"—not his entry of November 1, 1923—that constitutes "the time of entering the United States," within the meaning of § 4 (a); and inasmuch as he was not then, and has not since been, a member of the Communist Party he is not deportable under that section. Respondent, on the other hand, contends that § 4 (a) applies to *any* "entry into the United States" by petitioner, including that of November 1, 1923, and that inasmuch as he was a member of the Communist Party of the United States from 1932 to 1936 before departing from, and abandoning all rights to reside in, the United States on June 28, 1937, he is deportable under that sec-

---

[6] Although both §§ 1 and 4 (a) were repealed by § 403 (a) (16) of the Immigration and Nationality Act of June 27, 1952 (66 Stat. 163, 279), those sections nevertheless apply to this case under the saving clause (§ 405 (a)) of the 1952 Act, since the order of deportation involved here was issued prior to the effective date of the 1952 Act.

tion as an alien who has been, after entering the United States, a member of the Communist Party.

To decide the question presented it is necessary to examine and construe the statutes involved. It seems plain that the reference in § 4 (a) to the "classes of aliens enumerated in § 1 (2)" incorporates only the classes enumerated in subsections (A) through (H),[7] and that the only one of those classes which is applicable here is class "(C)," namely, "Aliens who *are* members of . . . the Communist Party of the United States." (Emphasis added.) There being no question about the fact that petitioner was not a member of the Communist Party at the time of entering the United States on October 8, 1938, or at any time thereafter, the question is whether that entry—as affected, if at all, by his re-entry as a returning resident alien after his one-day trip to Mexico in September 1939—or the one of November 1, 1923, constituted "the time of [his] entering the United States," within the meaning of § 4 (a), as amended by § 22 of the Internal Security Act of 1950. If it was the latter he is deportable, but if the former he is not.

It is obvious that Congress in enacting these statutes did not contemplate the novel factual situation that confronts us, and that these statutes are, to say the least, ambiguous upon the question we must now decide. Our study of the problem, in the light of the facts of this case, has brought us to these conclusions: The first phrase of § 4 (a)—"Any alien who was *at the time* of entering the United States"—necessarily refers to "the time" of petitioner's adjudicated lawful admission, as affected, if at

[7] Cf. *Berrebi* v. *Crossman,* 208 F. 2d 498, and *Klig* v. *Brownell* (dissenting opinion), 100 U. S. App. D. C. 294, 299–300, 244 F. 2d 742, 747–748 (certiorari granted, 355 U. S. 809; judgment of the Court of Appeals vacated and case remanded to the District Court with directions to dismiss the cause as moot, *sub nom. Klig* v. *Rogers,* 355 U. S. 605).

all, by his re-entry as a returning resident alien after his one-day trip to Mexico in September 1939, under which he claims the right to remain. The next phrase—"or has been at any time thereafter"—necessarily refers *to all times subsequent* to such lawful admission. Thus the two phrases, when read together, refer to the particular time the alien was lawfully permitted to make the entry under which he claims the status and right of lawful presence that is sought to be annulled by his deportation, and to any time subsequent thereto. Inasmuch as petitioner claims no right of lawful presence under his entry of November 1, 1923, and respondent does not by the deportation order here seek to annul any right of presence acquired under that entry, we must hold that petitioner's entry of October 8, 1938—as affected, if at all, by his returning from Mexico in September 1939—constituted "the time of entering the United States," within the meaning of § 4 (a). Since petitioner was not a member of the Communist Party "at the time of entering the United States" on October 8, 1938, and has not been a member "at any time thereafter," including, of course, the time of his returning entry from Mexico in September 1939, he is not deportable under § 4 (a), as amended by § 22 of the Internal Security Act of 1950.

In a different context this Court has said that the word *entry* "includes any coming of an alien from a foreign country into the United States whether such coming be the first or any subsequent one." *United States ex rel. Volpe* v. *Smith,* 289 U. S. 422, 425.[8] While that holding is quite correct, it is not here apposite or controlling, for the question here is not whether petitioner's coming to the United States in 1923 constituted an *entry*. Admittedly

---

[8] Cf. *Lewis* v. *Frick,* 233 U. S. 291; *United States ex rel. Claussen* v. *Day,* 279 U. S. 398; *United States ex rel. Stapf* v. *Corsi,* 287 U. S. 129.

it did. Rather, our question is whether it was *that entry,* or the adjudicated lawful entry of October 8, 1938, as affected, if at all, by petitioner's re-entry as a returning resident alien in September 1939, which constituted the time of petitioner's entry upon which his present status depends. In the novel circumstances here we think it evident that it could not be his entry of November 1, 1923, since petitioner had abandoned all rights of residence under that entry. *Volpe* did not involve any question of abandonment.

Of course, if petitioner had become a member of the Communist Party *after* the entry of October 8, 1938, or the re-entry of September 1939, he would have been deportable under § 4 (a). *Galvan* v. *Press,* 347 U. S. 522. But it is admitted that he was not a member of that party at those times or "at any time thereafter." Likewise, if he had applied for entry after June 27, 1952, he would be excludable under § 212 (a)(28)(C)(iv) of the Immigration and Nationality Act of 1952. 66 Stat. 182, 8 U. S. C. § 1182 (a)(28)(C)(iv).

The Government argues that the construction which we adopt would enable a resident alien, who after lawfully entering the United States for permanent residence became a member of the Communist Party, to avoid deportation for that cause simply by quitting the party and thereafter stepping across the border and returning. While a resident alien who leaves the country for any period, however brief, does make a new entry on his return, he is then subject nevertheless to all current exclusionary laws, one of which, at present, excludes from admission any alien who has ever been a member of the Communist Party. Section 212 (a)(28)(C)(iv) of the Immigration and Nationality Act of 1952, *supra.* If he enters when excludable, he is deportable, even though he would not have been subject to deportation if he had

not left the country.[9] Hence, our construction of the statutes here involved does not enable an alien resident to evade the deportation laws by leaving the country and returning after a brief period, for if at the time of his return he is within an excluded class he would be excludable, or, if he nevertheless enters, he would be deportable. It is admitted that when petitioner returned from Mexico after his one-day trip in September 1939 he was not excludable under then current exclusionary laws. That entry, being lawful, can only support our conclusion in this case.

Though §§ 1 and 4 (a) of the Anarchist Act of 1918, as amended by the Internal Security Act of 1950, are quite ambiguous in their application to the question here presented, we believe that our interpretation of them is the only fair and reasonable construction that their cloudy provisions will permit under the rare and novel facts of this case. "When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity. And this not out of any sentimental consideration, or for want of sympathy with the purpose of Congress in proscribing evil or antisocial conduct. It may fairly be said to be a presupposition of our law to resolve doubts . . . against the imposition of a harsher punishment." *Bell* v. *United States*, 349 U. S. 81, 83. And we cannot "assume that Congress meant to trench on [an alien's] freedom beyond that which is required by the narrowest of several possible meanings of the words used." *Fong Haw Tan* v. *Phelan*, 333 U. S. 6, 10. Cf. *Barber* v.

---

[9] *Shaughnessy* v. *United States ex rel. Mezei*, 345 U. S. 206; *United States ex rel. Volpe* v. *Smith*, 289 U. S. 422; *United States ex rel. Stapf* v. *Corsi*, 287 U. S. 129; *United States ex rel. Claussen* v. *Day*, 279 U. S. 398; *Lapina* v. *Williams*, 232 U. S. 78; *Lewis* v. *Frick*, 233 U. S. 291; *Chae Chan Ping* v. *United States*, 130 U. S. 581.

*Gonzales,* 347 U. S. 637, 642–643; *Delgadillo* v. *Carmichael,* 332 U. S. 388, 391.

As applied to the circumstances of this case, we hold that the phrase in § 4 (a), "Any alien who was at the time of entering the United States, or has been at any time thereafter," refers to the time the alien was lawfully permitted to make the entry and re-entry under which he acquired the status and right of lawful presence that is sought to be annulled by his deportation. Petitioner's entry of October 8, 1938, as affected, if at all, by his subsequent entry in September 1939 as a returning resident alien, constituted "the time of entering the United States" within the meaning of § 4 (a). Inasmuch as petitioner was not on October 8, 1938, or at any time thereafter—including September 1939—a member of the Communist Party, he is not deportable under §§ 1 and 4 (a) of the Anarchist Act of October 16, 1918, as amended by § 22 of the Internal Security Act of 1950, and the judgment must be reversed for that reason.

*Reversed.*

MR. JUSTICE CLARK, with whom MR. JUSTICE FRANKFURTER and MR. JUSTICE HARLAN concur, dissenting.

Petitioner entered the United States in 1923, being admitted for permanent residence at that time. From 1932 to 1936 he was a member of the Communist Party. In 1937 he voluntarily left the country to fight in the Spanish Civil War. A year later, in 1938, he returned and again was admitted. At that time our law did not exclude members or past members of the Communist Party.

In 1950 the Congress passed the Internal Security Act, § 22 of which required the Attorney General to deport all aliens who were Communist Party members "at the time of entering the United States, or . . . at any time there-

after." 64 Stat. 1008. As early as the Alien Registration Act of 1940, 54 Stat. 670, 673, the Congress had provided, as explained by the Senate Committee on the Judiciary, "that any alien who has been a member of [a proscribed class] at any time after his admission to the United States (for no matter how short a time or how far in the past so long as it was after the date of entry), shall be deported." S. Rep. No. 1796, 76th Cong., 3d Sess. 3. In enacting § 22 of the Act of 1950, the Congress stated, "The purpose . . . is to strengthen the provisions of existing law with respect to the exclusion and deportation of subversive aliens." S. Rep. No. 2230, 81st Cong., 2d Sess. 5. This report further declared, "[T]he conclusion is inescapable that . . . the Communist movement in the United States is an alien movement . . . . The severance of this connection and the destruction of the life line of communism becomes . . . an immigration problem." *Id.,* at 16. Additional classes of aliens were made deportable "at any time after entry, whether or not membership in the class has ceased." *Id.,* at 23. The construction of the section as applying to membership after *any* entry—including the first as well as the last—seems to be demanded by this legislative history. See also 84 Cong. Rec. 10448–10449 (remarks of Representative Hobbs), 86 Cong. Rec. 8343 (remarks of Senator Connally). That the Act applies retroactively to all aliens regardless of the time of their entry is admitted. See *Galvan* v. *Press,* 347 U. S. 522 (1954). The simple test, therefore, is whether the alien was at any time a member of the Communist Party upon or after coming to the United States, regardless of how many entries he may have made. Petitioner was a Party member subsequent to his arrival in 1923, so the language "at any time thereafter" clearly makes the section applicable to him.

But today the Court, in effect, writes the word "last" into the statute. The result is that an alien who has been a member of the Communist Party in the United States is deportable only if "at the time of *last* entering the United States, or . . . at any time thereafter," he was a member. This cripples the effectiveness of the Act, permitting aliens to escape deportation solely because they happen to leave and then re-enter the country. It is conceded by the Court that had petitioner remained here he would have been deportable. Hence, the construction of the Court restricts the literal sense of the 1950 Act to aliens who have continuously remained in the United States.

This innovation is contrary to decades of uninterrupted administrative interpretation and practice, and also to prior cases of this Court. The Immigration and Naturalization Service has always construed "entry" as meaning any coming of an alien from a foreign country to the United States.[1] The Congress recognized this interpretation when considering the Immigration and Nationality Act of 1952. H. R. Rep. No. 1365, 82d Cong., 2d Sess. 32; S. Rep. No. 1137, 82d Cong., 2d Sess. 4.[2] The Court, however, side-steps this authority by saying that "the novel circumstances here" preclude our consideration of the 1923 entry because "petitioner had abandoned all rights of residence under that entry." But that is not the question. True, petitioner makes no claim under the

---

[1] For a comprehensive review of administrative action with regard to re-entry of resident aliens, see Lowenstein, The Alien and the Immigration Law, 206–213.

[2] Although the Act of 1952 is not directly involved here, it is significant that the meaning of "entry" was codified in § 101 (a) (13) as "any coming of an alien into the United States, from a foreign port or place or from an outlying possession . . . ." 66 Stat. 167, 8 U. S. C. § 1101 (a) (13).

1923 entry, and the 1938 admission is not dependent on the former but was a regular "quota immigrant" entry. Nevertheless, petitioner is an alien who entered and "thereafter" was a member of the Communist Party while in the United States. Any number of additional entries—in 1938 or otherwise—cannot wipe out that fact.

In *United States ex rel. Volpe* v. *Smith,* 289 U. S. 422 (1933), the question was whether an alien's criminal conviction had occurred "prior to entry" within the meaning of § 19 of the Immigration Act of 1917. 39 Stat. 889. The alien contended that "entry" should be construed as meaning, in effect, "first entry," but the argument was rejected. The Court said, "An examination of the Immigration Act of 1917, we think, reveals nothing sufficient to indicate that Congress did not intend the word 'entry' . . . should have its ordinary meaning." 289 U. S., at 425. See also *United States ex rel. Claussen* v. *Day,* 279 U. S. 398 (1929). Petitioner here makes the converse argument that the word "entering" should be modified to read "last entering." I would not so amend the statute in disregard of the long and uniform judicial, legislative, and administrative history whereby "entry" has acquired a definitive, technical gloss, to wit, its ordinary meaning and nothing more or less. Therefore, I would affirm the judgment of the Court of Appeals.