MATTER OF H——

In DEPORTATION Proceedings

A-4743741

*Decided by Board August 28, 1958*

Deportability—Communist Party membership—Meaningful association established where respondent declines to testify—Charge based on membership after entry may be predicated upon original admission for permanent residence although membership had terminated prior to last entry as returning resident—Suspension of deportation—Physical presence required under section 244(a)(5) must be for continuous ten-year-period preceding application.

(1) "Meaningful association" test in *Rowoldt* v. *Perfetto*, 355 U.S. 115, is met where record establishes respondent's membership in the Communist Party and she declines to testify as to nature of her membership.

(2) Respondent is deportable on charge of membership "after entry" when she was lawfully admitted for permanent residence in 1929, was a member of the Communist Party in 1938–39, and last entered the United States in 1947 with a reentry permit after a six-month-trip abroad. *Bonetti* v. *Rogers*, 356 U.S. 691, distinguished.

(3) Section 244(a)(5) application filed in 1956 did not qualify respondent for suspension of deportation since her departure from the United States in 1947 prevented her from completing a period of continuous physical presence in the United States of ten years prior to 1957. (Cf. *Matter of M——*, A-2669541, 5 I. & N. Dec. 261.)

CHARGES:

Warrant: Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable at entry as one who was member of the Communist Party of the United States.

Lodged: Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable at entry as one who prior to entry was a member of the Communist Party of the United States.

Act of 1952—Section 241(a)(6) [8 U.S.C. 1251(a)(6)]—Alien who was a member of the Communist Party of the United States subsequent to entry.

BEFORE THE BOARD

**Discussion:** This respondent, a 54-year-old married female, native and citizen of Great Britain, was admitted to the United States for permanent residence in 1929. She last entered in 1947. She has been found to have been a voluntary member of the Communist Party of the United States during part of 1938 and 1939.

122

By order dated November 9, 1953, the special inquiry officer ordered that the respondent be deported on the first lodged charge. On June 25, 1954, the respondent's appeal from the order of the special inquiry officer was dismissed. On August 27, 1954, we dismissed the motion for reconsideration. On March 10, 1955, the Commissioner moved that proceedings be reopened to enable lodging of the charge that the respondent had been a member of the Communist Party after her original entry in 1929. On April 20, 1955, this motion was granted on the condition that the court considering the respondent's request for review of administrative proceedings would have no objection to such action. Reopened hearing was held and on December 15, 1955, the second lodged charge was placed. It states that the respondent is deportable under the Immigration and Nationality Act as one who had been a member of the Communist Party of the United States after entry (in 1929). On March 30, 1956, the respondent was found deportable on the new charge and on August 24, 1956, her appeal to this Board was dismissed. This motion for reconsideration is dated May 22, 1958. Oral argument was granted and the respondent was heard on June 24, 1958.

Counsel seeks termination of proceedings for three reasons. He argues that the record fails to establish that the respondent was a member after her last entry in June 1947 and that under the rule in *Bonetti* v. *Rogers*, 356 U.S. 691, the charge is not sustained. He argues that the evidence of record is insufficient to sustain the finding of deportability. And, lastly, he urges that if the respondent is found deportable, she should be declared statutorily eligible for suspension of deportation.

We shall first discuss the sufficiency of the evidence. The respondent refused to testify on the issue of Communist Party membership other than to state she was not a member of the Communist Party at the time of the hearing. Membership in the Communist Party was established by the testimony of Government witness K——, a police officer who in 1928 had infiltrated the ranks of the Communist Party to report on their activities for the police. He remained a member until the fall of 1939. From 1936 to 1939 he was an Assistant County Membership Director of the Communist Party with the duty of keeping track of the units to which members belonged; and he assisted in the semi-annual dues check-up and annual membership registration. He testified that in 1938 an application card in the name of R——M——H—— had passed through his hands; that it showed the person involved to be a seamstress who was working in Hollywood in a hotel; and that she was English-Irish and foreign born. Because the last name on the application was similar to that of his superior in the police depart-

ment the witness made an effort to obtain additional information about R——H——. He stated that about 6 weeks after he had seen the card, R——M——H—— was pointed out to him at a mass meeting of the Communist Party. He identified the respondent as the person who had been pointed out as R——H——. He also saw her at "open" affairs. He stated that he saw her 1939 registration and 1938 membership book in connection with the performance of his Communist Party duties. He testified that his Communist Party records did not contain information concerning persons other than members of the Communist Party. He also testified that it was his job to ascertain the number of dues stamps which should be purchased by each particular unit; that he accompanied the Communist Party official who sold the stamps to the unit dues secretary when the sale of the stamps was made, and that a sale of stamps was made for the respondent.

K—— was put through an extensive cross-examination and displayed a good memory. He answered with care and deliberation and impressed one as being a responsible, reliable witness. The special inquiry officer relied upon his testimony. In view of the fact that it was the witness' duty as a Communist Party member to take care of Communist Party membership records, and it was his duty as a policeman to learn about the members of the Communist Party, we believe that his contradicted testimony must be given great weight.

Counsel believes that even if membership is proven, the record fails to establish that it was a meaningful association required by *Rowoldt* v. *Perfetto*, 355 U.S. 115. The respondent does not allege that the membership was not meaningful. She has chosen not to testify on the subject of membership in the Communist Party. There is no explanation from her as to the nature of her membership. Under such circumstances, we believe it proper to conclude that she understood that the organization she had joined was the political organization known as the Communist Party (*Matter of Z——*, A–4472847, 7 I. & N. Dec. 728).

We pass on now to the issue raised by counsel concerning the fact that the respondent last entered in 1947 and the record does not show that she was a member of the Communist Party after that entry, yet her deportation has been ordered on the ground that she had been a Communist Party member after entry. The issue is whether the Service may use the respondent's 1929 entry or must use only the 1947 entry. Regarding her entries, the respondent testified she first entered the United States for permanent residence in 1929 and that she has resided continuously in the United States except for about 6 one-day "temporary trips" to Mexico made in 1945 and a trip of about 6 months to Australia in

1947. She stated that at the time of leaving the United States, whether it was to go across the border to Mexico or to go to Australia, it had been her intention to maintain her domicile in the United States.

*Bonetti* v. *Rogers*, 356 U.S. 691, cited by counsel, involved an alien who was admitted to the United States for permanent residence in 1923. He had been a member of the Communist Party of the United States from 1933 to 1936. In June 1937 he departed from the United States for Spain "abandoning all rights of residence here." On September 19, 1938, he returned to the United States as a "new" immigrant and was admitted for permanent residence upon surrender of a quota immigrant visa. He remained continuously in the United States except for a one-day visit to Mexico in September 1939. His deportation was ordered under the Act of 1918, as amended by the Internal Security Act of 1950, on the ground that he was an alien who had been a Communist Party member after entering the United States. The issue was whether the entry he had made in 1923 could be used as a basis of deportation or whether the Service was required to use only the last entry. The court held that the entry referred to in the deportation statute was the one which the alien was "lawfully permitted to make" and "under which he claims the status and right of lawful presence that is sought to be annulled by his deportation." The court held that since the respondent claimed no right of lawful presence because of his entry in 1923 and the Service did not by the deportation order seek to annul any right of presence acquired under the 1923 entry, it must be held that the entry in 1938 constituted the entry which must serve the basis of the deportation proceedings. (The effect of the reentry from Mexico in 1939 was not explored).

At oral argument counsel maintained that respondent fell within the rule of the *Bonetti* case because she lost the right to reenter after her departure, since upon her return she could have been excluded if she were excludable under the immigration laws. This fact, although true, is not relevant to the issue. Bonetti too could have been excluded if he had been inadmissible. That did not prevent him from acquiring the right to lawful residence. The fact that aliens attempting to enter must satisfy all the requirements of the immigration laws is, therefore, not controlling. The issue is what entry gave the alien the right of presence which the Service seeks to annul. In *Bonetti* the right of presence arose out of the entry with a visa in 1938. There was no other entry which gave him this right. Therefore, only the 1938 entry could be used. In the respondent's case, her right of presence arises out of the fact that she was lawfully admitted to the United States in 1929. She did not have a visa when she returned in 1947. She was ex-

125

cused from the visa requirement because she had her home in the United States; was departing from it temporarily; and was going to return to it. She was given a reentry permit excusing her from the necessity of obtaining a visa; the permit was evidence that respondent had been lawfully admitted for permanent residence and had never given up her right to such residence (8 CFR 164, 176.201–2(c), Book 1, 1946 Supp. to Code of Fed. Reg., G.P.O., Wash., 1947). Bonetti had given up all his rights based upon his first entry by relinquishing his domicile. He could not return with a reentry permit. He needed a new entry based on a new quota visa, to give him the right to lawful residence. Respondent never gave up her rights based on her first entry. She took pains to safeguard these rights. Her right to lawful presence is based on the 1929 entry. The Service seeks to annul the right of presence acquired under the 1929 entry and never abandoned. Therefore, the entry in 1929 may serve as the basis for these proceedings. Respondent was a member of the Communist Party after her entry in 1929, and under such circumstances, she is deportable as charged in the second lodged charge.

Respondent seeks suspension of deportation under section 244(a)(5), 8 U.S.C. 1254(a)(5), under which she was required to show a period of ten years' physical presence in the United States immediately preceding the filing of her application (*Matter of M——*, A–2669541, 5 I. & N. Dec. 261). Informal application for suspension was made at the hearing on January 26, 1956, and it was formally presented at the hearing on March 16, 1956. Counsel maintains that respondent was required to show only a period of ten years' presence following the ending of the condition which caused deportability. One difficulty with this contention is that the respondent has not shown when the status which caused deportability did end. It is established that she had been a member in 1938 and 1939. She does not state when her membership ended. Conceivably it could have continued for many years after 1939 when the Government witness left the Communist Party. In any event, we have decided that it is the ten-year-period immediately preceding the application during which the respondent must show physical presence in the United States (*Matter of M——, supra*). We see no reason to change this ruling. The respondent's application was filed in 1956. It is clear that her departure in 1947 prevented her from completing a period of continuous physical presence in the United States of ten years prior to 1957. The fact that she has such residence at the present cannot be of benefit to her because when the order of deportation under the Immigration and Nationality Act became final on August 24, 1956, upon dismissal of the appeal, respondent was not eligible for suspension of deporta-

tion. In such case, the grant of suspension of deportation is precluded (*Matter of O——*, A–4188325, 7 I. & N Dec. 457). The motion must be denied.

**Order:** It is ordered that the motion be and the same is hereby denied.

*Editor's Note:* Upon consideration of a motion of the Service dated June 6, 1960, in the subject case, the Board of Immigration Appeals in an order dated June 21, 1960, granted the motion, withdrew the outstanding order of deportation, and remanded the subject case to the Service for further consideration and action.