**Maria MIRABAL–BALON, Plaintiff,**

v.

**P. A. ESPERDY, District Director, Immigration and Naturalization Service, New York, New York, Defendant.**

United States District Court
S. D. New York.
Oct. 26, 1960.

Joshua S. Koenigsberg, New York City, for plaintiff.

S. Hazard Gillespie, Jr., U. S. Atty., Southern Dist. of New York, New York City, for defendant, Roy Babitt, Sp. Asst. U. S. Atty., New York City, of counsel.

**318**

IRVING R. KAUFMAN, District Judge.

In this declaratory judgment action brought by the plaintiff seeking to declare an order for her deportation invalid, the defendant has moved for summary judgment. Plaintiff, in turn, has moved for judgment on the complaint.

Plaintiff's deportability is premised upon a single act of procuring alleged to have taken place on March 24, 1958.[1] On May 5, 1958, she was served with an order to show cause seeking her deportation under Section 241(a) (12) of the Immigration and Nationality Act (8 U.S.C.A. § 1251(a) (12) ), which provides that an alien becomes subject to deportation who, "by reason of any conduct, behavior or activity at any time after entry became a member of any of the classes specified in paragraph (12) of section 1182(a) of this title." That section (Section 212(a) (12) of the Act), in turn enumerates

> "Aliens who are prostitutes or who have engaged in prostitution, or aliens coming to the United States solely, principally, or incidentally to engage in prostitution; aliens who directly or indirectly procure or attempt to procure, or who have procured or attempted to procure or to import, prostitutes or persons for the purpose of prostitution or for any other immoral purpose; and aliens who are or have been supported by, or receive or have received, in whole or in part, the proceeds of prostitution or aliens coming to the United States to engage in any other unlawful commercialized vice, whether or not related to prostitution."

After a hearing granted pursuant to statute, the Special Inquiry Officer found that the plaintiff had procured one woman for the purpose of performing an act of prostitution; that this single act of procuring placed her within the enumerated categories in Section 212(a) (12); and thus that she was deportable under Section 241(a) (12). An order directing the plaintiff's deportation was entered. On October 13, 1958, the Board of Immigration Appeals filed its decision dismissing her appeal.

Plaintiff raises a number of contentions here, addressed to the administrative proceedings. But, in the view I take of the case, it is necessary only to consider her contention that a single act of procuring one woman is insufficient, as a matter of law, to sustain a finding of deportability. It is clear, and the defendant does not contend otherwise, that the act allegedly committed on March 20, 1958 is the only incident relied upon in ordering deportation; no other evidence was introduced at the hearing. In fact, it appears that the plaintiff's prior record is unblemished.

The question of whether a single act of procuring is sufficient appears to be one of first impression in the courts. Thus, it must be determined by means of an evaluation of the probable legislative intent. As is so often the case, the intent of Congress has not been made crystal clear. It must be sought, therefore, by a process of reasoning and inference from analogy.

A persuasive analogy can be drawn to the clause in the same Section (8 U.S.C.A. § 1182(a) (12) ) dealing with prostitution. Prior to the amendment of the immigration laws in 1952, aliens "practicing prostitution" were rendered deportable. In United States ex rel. Mittler v. Curran, 2 Cir., 1925, 8 F.2d 355, the Court of Appeals held that a single act of prostitution was insufficient to meet this requirement. The court commented that

> "[i]n that common or ordinary parlance which legislative draftsmen are presumed to use, the phrase

1. Plaintiff was arrested on that day, and subsequently convicted in the City Magistrate's Court of the City of New York, of violating Section 887 of the New York Code of Criminal Procedure. She was given a ninety-day suspended sentence. It is the act of procuring, not this conviction, which is relied upon as a basis for deportation.

means to pursue as a business or occupation the sale of one's body for carnal intercourse." 8 F.2d at page 356.

The correctness of this decision has never been challenged. For example, in In the Matter of R——, 2 I. & N.Dec. 50 (1944), the Board of Immigration Appeals in concluding that an alien was not deportable, reasoned that "[t]he respondent has, on only one occasion, insofar as this record shows, sold her body for carnal intercourse."

The 1952 amendment changed the statutory language to its present form, i. e., "aliens who are prostitutes or who have *engaged in prostitution*" (emphasis supplied), but there is no legislative history to indicate that aliens committing single, isolated acts of prostitution were now to be included within its scope. In fact, administrative interpretation subsequent to the amendment clearly indicates the contrary. Thus, in In the Matter of T——, 6 I. & N.Dec. 474 (1955), the Special Inquiry Officer found that

"an alien must engage in prostitution, and that 'engage in' means to carry on over a period of time a type of conduct, a pattern of behavior or form of activity in which sale of the body for carnal intercourse is an integral part * * * It does not include a single isolated act of prostitution." See also 22 C.F.R. § 41.91 (12) (Supp.1960).

I can see no sound reason why the same requirement of a continuous, regular pattern of behavior was not meant to apply to procuring as well. It is difficult to believe that different criteria were intended to control a basically similar vice enumerated in the same section. The statute, indeed, connotes plurality of acts. It refers to "aliens who directly or indirectly procure or attempt to procure, or who have procured or attempted to procure or to import, *prostitutes* or *persons* for the purpose of prostitution or for any other immoral purpose" (emphasis supplied). This plural language in itself indicates that more than a single act is required to make the perpetrator subject to the drastic sanction of deportation. The section was intended to allow for the deportation of those who, by a continuous course of immoral conduct, have evidenced a character rendering them unfit for residence in the United States. The evidence in the instant case showed an isolated instance with no evidence of continuity or a course of conduct.

The defendant, at most, can only contend that the statute is ambiguous; that it is not clear as to whether one act, or a pattern of behavior, is required. In this situation, I recognize the well-settled and salutary principle of statutory construction that, when a statute imposes penal or other harsh consequences, it is to be strictly construed. Any ambiguities are to be resolved in favor of leniency. See, e. g., Bonetti v. Rogers, 1958, 356 U.S. 691, 78 S.Ct. 976, 2 L.Ed.2d 1087. That the consequences of deportation are harsh cannot be gainsaid. Thus, the Supreme Court, in interpreting another provision of the Act, said:

"deportation is a drastic measure and at times the equivalent of banishment or exile * * *. It is the forfeiture for misconduct of a residence in this country. Such a forfeiture is a penalty. To construe this statutory provision less generously to the alien might find support in logic. But since the stakes are considerable for the individual, we will not assume that Congress meant to trench on his freedom beyond that which is required by the narrowest of several possible meanings of the words used." Fong Haw Tan v. Phelm, 1948, 333 U.S. 6, 10, 68 S.Ct. 374, 376, 92 L.Ed. 433.

And, more recently, in Bonetti v. Rogers, supra, another case involving deportation, the Court repeated these guiding principles:

" 'When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity. And this not out of any sentimental consideration, or for

want of sympathy with the purpose of Congress in proscribing evil or antisocial conduct. It may fairly be said to be a presupposition of our law to resolve doubts   *   *   * against the imposition of a harsher punishment.'"   356 U.S. at page 699, 78 S.Ct. at page 981.

I find that this presupposition is most clearly applicable to the instant case. Thus, the defendant's motion for summary judgment is denied, and the plaintiff's cross motion for judgment on the pleadings is granted.

Settle order.